ALLEN DUDLEY & COMPANY V. FIRST NATIONAL BANK OF
OMAHA: FIRST STATE BANK OF LARAMIE, APPELLANT:
RALPH BROKAW ET AL., APPELLEES.

FILED JANUARY 29, 1932. No. 27931.

*Finlayson, Burke & McKie*, for appellant.

*Kennedy, Holland & DeLacy* and *McConnell & Pence*,
contra.

Heard before GOSS, C. J., DEAN and EBERLY, JJ., and
RAPER and RYAN, District Judges.

RYAN, District Judge.

This was an action instituted by Allen Dudley & Company, a live stock commission firm of Omaha, to enjoin the First National Bank of Omaha from paying to the appellant, First State Bank of Laramie, Wyoming, the proceeds of a draft made payable to the latter bank and collected from the plaintiff, Allen Dudley & Company, through the First National Bank of Omaha, upon the ground that others claim an interest in the proceeds of the draft. The appellant, appellees and others were made parties defendant. The appellees, Ralph Brokaw, Edith Brokaw and Rosenlieb & LeBeau, filed a petition of intervention, in which they claimed the proceeds of the draft in the amount of $1,970, as proceeds of cattle which they had sold to the defendant Dwight O. Herrick. The contest was solely between the interveners, who for convenience will be referred to as the appellees, and the appellant, First State

Bank of Laramie, Wyoming, as to who was entitled to the $1,970.

There is practically no dispute in the evidence as to the facts in the case, except as to the knowledge of the appellant's officers as to the source of the money in question. The appellant is a banking institution, organized and existing under the laws of the state of Wyoming, with its banking house at Laramie, Wyoming. The appellees in this case, Ralph Brokaw, Edith Brokaw and Rosenlieb & LeBeau, are ranchmen and cattle raisers, living approximately fifty miles northwest of Laramie, Wyoming. Dwight O. Herrick is, and was for many years prior to November 16, 1929, a cattle buyer and ranchman, living in Laramie, Wyoming, and the owner of a ranch upon which he ran cattle, located twenty-four miles west of Laramie, Wyoming, and it also appears quite clearly from the evidence that he was on November 16, 1929, and had been for some years insolvent.

The record discloses that the defendant, Dwight O. Herrick, had been indebted to the appellant in approximately the sum of $26,600 for several years, which indebtedness had been renewed from time to time and on which very little had been paid in the fourteen years it had been running. This indebtedness was evidenced by notes and a chattel mortgage on certain cattle belonging to Dwight O. Herrick.

It is further shown by the record that on or about the 18th day of November, 1929, Dwight O. Herrick had a balance in his checking account with appellant of approximately $2,779.56; that, on the 15th day of November, 1929, Herrick purchased some cattle from one Ole Ericksen, a resident of Albany county, Wyoming, and gave as a down payment therefor a check in the sum of $500. This check was presented to the appellant and paid on November 16, 1929. On this same day Herrick purchased some cattle from the appellees for the sum of $2,170.29, which sum was to be paid to the appellees at Rock River, Wyoming, upon delivery of the cattle. The cattle were delivered

with a bill of sale therefor, and Herrick delivered to Ralph Brokaw a check in the sum of $1,439.49, drawn upon the appellant bank, and gave Archie H. LeBeau for Rosenlieb & LeBeau a check in the sum of $730.80, in payment for the cattle purchased from them. This check was also drawn upon the appellant bank. This transaction took place about noon on November 16, 1929, at the town of Rock River, approximately forty miles north of Laramie. The appellant bank closed its place of business on Saturday, at the hour of 1 o'clock p. m., and said checks could not be presented for payment on that day.

The record further disclosed that all of the cattle purchased by Herrick were consigned to the plaintiff, Allen Dudley & Company, at South Omaha. After purchasing the cattle, Herrick returned to Laramie and drew two sight drafts upon the plaintiff, Allen Dudley & Company, which were made payable to the appellant bank, one for the sum of $9,347, which was drawn against the cattle purchased from Ole Ericksen, and the other in the sum of $1,970, which was drawn against the cattle purchased from 'the appellees. These drafts were mailed to the appellant bank, with instructions to deposit the same in his checking account.

The record goes on to show that on November 17, 1929, which was Sunday, Charles W. DeKay, cashier of the appellant bank, received the letter inclosing the drafts and took the same to the bank and mailed them to the appellant's correspondent, the First National Bank of Omaha, for collection.

The further facts are revealed that, on Monday, November 18, 1929, the appellant bank applied the balance in Herrick's account, including the credit given for the two drafts received by it on Sunday, totaling the sum of $14,096.56, upon the past due indebtedness of said Herrick, which amounted to $26,600. After this amount had been applied upon his indebtedness, there was nothing left in Herrick's account out of which any outstanding checks might be paid.

On Sunday, November 17, 1929, the appellees mailed the checks received by them from Herrick in payment for cattle to the First National Bank of Laramie, Wyoming, with which they did business, which, on the 18th of November, 1929, presented the checks to the appellant bank for payment and payment was refused. The First National Bank of Laramie notified the appellees to this effect, and on the following day, Tuesday, November 19, 1929, Ralph Brokaw and Archie H. LeBeau came to Laramie and the Brokaw check was again presented to the appellant bank for payment and payment was again refused.

Tuesday morning, November 19, 1929, the defendant Herrick went to the appellant bank and there talked with Charles W. DeKay, the cashier, concerning the drafts. At that time DeKay did not advise Herrick of the action taken the day before, in crediting his balance, together with the amount of these drafts, upon his indebtedness, but told him he had wired Omaha, inquiring about the payment of the drafts, and that the checks could not be paid until he was sure the drafts would be paid, and added: "We have all day in which to pay them." It appears that the defendant Herrick also wired the plaintiff commission firm regarding payment of the drafts.

There is also disclosed in the record that the appellees and the First National Bank of Laramie also wired the plaintiff concerning the sight drafts and instructed them to institute this suit to enjoin the First National Bank of Omaha from paying over the proceeds derived from the sale of the cattle to the appellant bank. Charles W. DeKay, cashier of the appellant bank, testifies that he did not know, at the time he received the two drafts, that they were drawn against cattle which had been purchased by Herrick from the appellees; that he did not know they were so drawn, at the time he applied the balance, including the credit given for these drafts, upon Mr. Herrick's indebtedness; that the first information he had in that regard was when the checks to Brokaw and LeBeau were presented for payment. The appellees, however, take the position

that the appellant bank knew the nature of Mr. Herrick's business, and that, if it did not know the real source of the drafts deposited on November 17, 1929, its knowledge of Mr. Herrick's business and his manner of doing business was such as to put the bank upon inquiry as to the nature of the transaction.

The defendant Dwight O. Herrick filed an answer, in which he admitted that the matters and things set forth in plaintiff's petition and the appellees' petition of intervention were true; that he gave the checks to the appellees, as claimed by them; and that said checks had not been paid; and that the money, which is the subject-matter of this suit, is the money received from the sale of the cattle belonging to the appellees and that they should recover the amount claimed in their petition. The answer of the appellant was a general denial.

Herrick was a witness for the appellees and testified in detail concerning the transaction with the appellees and his business dealings with the appellant bank, and claimed that he had an arrangement with the appellant that he would buy cattle and issue checks in payment for them, which checks were to be paid out of the proceeds of sight drafts which he would draw upon the plaintiff commission company and deposit with the appellant bank. The only officer of the bank who testified was the cashier, Charles W. DeKay. He denies any knowledge of any such agreement with Herrick, and also testifies that no one else had the authority to make such an agreement, regardless of the facts shown in the record. The record discloses a long course of dealings between Herrick and the appellant bank, which, if they do not substantiate Herrick's testimony as to the arrangement claimed by him, at least unquestionably show that such a procedure was followed, and that, during the months of September and October, 1929, Herrick made purchases of cattle totaling more than $25,000, drew sight drafts upon Allen Dudley & Company, and issued checks against the proceeds of these sight drafts, and that all of the checks were paid by the appellant bank.

Herrick further testifies that in 1928 he did business in exactly the same way, except that he shipped the cattle to a commission .firm in Denver instead of to the plaintiff. In the light of this testimony, it cannot be said that the appellant bank did not have knowledge of Herrick's manner of doing business, and when the two sight drafts were received on Sunday, November 17, 1929, it knew or should have known that these sight drafts were drawn on Allen Dudley & Company against shipments of cattle which Herrick had made, and that Herrick had bought these cattle from various parties, as the record shows he had been in the habit of doing for a year or more, and that undoubtedly there were checks outstanding, representing the purchase price of these cattle, which were to be paid out of the proceeds of these drafts.

There is another circumstance that appears in the testimony of the witnesses that throws some light upon the action of the bank in crediting Herrick's account with the amount of these drafts and charging off the entire amount and crediting it upon his past due obligations. According to the testimony of Archie H. LeBeau, when he and Ralph Brokaw learned that the checks had been dishonored, they came to Laramie, and Brokaw got his check and went down to the appellant bank and again presented it for payment. Payment was again refused, and Mr. DeKay said: "He was sorry that there was no funds to take it up, but that he thought in the course of a few days Mr. Herrick's brother would come to his rescue and we would get our money through Mr. Herrick's brother; that Mr. Herrick's brother would come to D. O. Herrick's rescue with additional funds to cover up his indebtedness." Ralph Brokaw, in his testimony, quotes Mr. DeKay as follows: " 'I am very sorry for the embarrassing situation that has arisen over this deal.' He said, 'Had I known what it would cause I would not have done it.' He said, 'It was necessary to put Herrick in this embarrassing situation to force him to give the First State Bank more security upon an obligation that Mr. Herrick had with the First State

Bank.' " Charles W. DeKay in his testimony does not deny these statements, but merely states that he does not remember making them, and does say: "I says, I am in hopes if Herrick's brother comes out, and comes to his rescue, that this thing will be fixed up."

The trial court found that the appellees were entitled to the proceeds of the sale of the cattle shipped by Dwight O. Herrick to the plaintiff November 16, 1929; that the proceeds of the sale of said cattle amounted to the sum of $1,970, which the plaintiff paid to the Packers National Bank of Omaha, who, in turn, paid this amount to the First National Bank of Omaha for the appellant bank, and rendered judgment against the appellant, First State Bank of Laramie, Wyoming, in the sum of $1,970 and for costs.

The appellant claims to be a holder in due course of the draft made by Dwight O. Herrick to its order and drawn upon the plaintiff, Allen Dudley & Company, and that, when this draft was credited to the account of the defendant Dwight O. Herrick, it had the right to apply the balance in Herrick's account to his past due note in the bank.

It is conceded that a bank has a lien upon deposits and other property coming into its hands, to secure overdrafts and debts owing from the depositors. It is also clear that in the case of money neither a bank nor an individual should be required to accept it at the same risk and peril that they would other personal property, that money has no ear marks, and there is nothing about it that will give notice of the source from which it is derived. The proposition is also clear, and needs no citation of authority to sustain it, that where a bank, in the regular course of business, takes drafts or checks from one who is the apparent but not the true owner thereof, and, by reason of the apparent ownership of such drafts or checks, places itself in a position where it would be inequitable to require it to account to the true owner of the fund represented by such drafts or checks, the bank should not be held to account to the true owner of such fund. In the instant case, however, it is not contended by the appellant

that there was any change of position on account of the deposit of the drafts by Herrick. It advanced him no money or credit upon them. The First State Bank of Laramie was in exactly the same position after the deposit of such drafts as it was before. It did not change its position in any particular. Before the receipt of the drafts on November 17, 1929, Herrick owed the appellant bank approximately $26,600. He still owes that amount and obtained no credit by reason of the deposit of the drafts. His testimony shows that he deposited these drafts for the purpose of securing a credit with which to meet the checks he had issued in payment of the appellees' cattle. As was said by the court in *Shotwell v. Sioux Falls Savings Bank,* 34 S. Dak. 109: "We deny that there is any recognized principle of law, or even any reason founded upon that necessity which is said to know no law, that will sustain either the justice or necessity of holding that, when a fund, even though it consists of money, can be fully and clearly traced into the hands of one who has neither paid a valuable consideration therefor nor changed his relation to the person from whom the fund was received so as to give rise to any equitable defense against the claims of the true owner of such fund—when one man has money which in equity and good conscience belongs to another— such fund should not be recovered by the equitable owner thereof." The same principle was recognized in *Thex v. Shreve,* 38 Wyo. 285, in which it was held that the rule which gives a bank the right to set off the money or deposit to the credit of a depositor to the discharge of an indebtedness of the depositor to the bank was never intended to be extended to enable a bank to apply the funds which happened to be to the credit of an indebted depositor, and which in equity and good conscience belonged to another, to the discharge of such an indebtedness.

In principle this case is quite similar to *Cady v. South Omaha Nat. Bank,* 46 Neb. 756. In that case it was held that, where a commission merchant deposited in a bank money realized from the sale of live stock consigned to him

by a shipper and his account with the bank was overdrawn, regardless of the question of notice, the bank was accountable to the shipper, and that the bank could not apply the money deposited by the commission merchant to the satisfaction of such overdraft.

This is a case in which the cattle of the appellees were sold to Herrick for cash. Herrick executed and delivered to the appellees checks upon the appellant bank. The law is well settled that in such a case title did not pass, in the absence of payment of the checks. A check is not payment, but is only so when the cash is received upon it. *Lewis v. McMahon & Co.,* 307 Mo. 552; *Nelson v. Conroy Savings Bank,* 196 Ia. 391; *South San Francisco Packing & Provision Co. v. Jacobsen,* 183 Cal. 131; *Clark v. Hamilton Diamond Co.,* 209 Cal. 1. As was said in *First Nat. Bank of Byars v. Griffin & Griffin,* 31 Okla. 382: "Where goods are sold for cash and delivered, the vendor taking the vendee's check for the price, which on presentment within due time is dishonored, title to the goods does not pass, and the vendor may recover the value thereof from the vendee and from any party who has no greater equities."

The appellant bank cannot be permitted to recoup its losses of fourteen years ago at the expense of innocent parties. At the time the appellees learned that Herrick's checks would not be honored their cattle were gone. They had no remedy except to claim the proceeds of the sale. Unquestionably, as between these appellees and the appellant, the equities are all in favor of the appellees.

As we view the facts in this case and the law applicable to them, it is unnecessary to decide the other questions raised; however, if the question of notice were material, the evidence is ample to sustain a finding in favor of the appellees on that issue.

The decree and judgment of the district court was correct and is

AFFIRMED.