Dale DOCKENDORF, d/b/a Corsica Livestock Sales Company, Appellee,

v.

DAKOTA COUNTY STATE BANK, a Nebraska Corporation; F. J. Palmersheim; Lester B. Moore, Appellants,

William E. Verschoor, Jr. and Joanne P. Verschoor, doing business as Northern Cattle Company, Appellees.

William E. VERSCHOOR, Jr. and Joanne P. Verschoor, doing business as Northern Cattle Company, Appellees,

v.

DAKOTA COUNTY STATE BANK, a Nebraska Corporation, Appellant.

Dale DOCKENDORF, d/b/a Corsica Livestock Sales Company, Appellant,

v.

DAKOTA COUNTY STATE BANK, a Nebraska Corporation; F. J. Palmersheim; Lester B. Moore; William E. Verschoor, Jr. and Joanne P. Verschoor, doing business as Northern Cattle Company, Appellees.

William E. VERSCHOOR, Jr. and Joanne P. Verschoor, doing business as Northern Cattle Company, Appellees,

v.

DAKOTA COUNTY STATE BANK, a Nebraska Corporation, Appellee.

Dale DOCKENDORF, d/b/a Corsica Livestock Sales Company,

v.

DAKOTA COUNTY STATE BANK, a Nebraska Corporation; F. J. Palmersheim, Appellees,

Lester B. Moore, William E. Verschoor, Jr. and Joanne P. Verschoor, doing business as Northern Cattle Company, Appellants.

William E. VERSCHOOR, Jr. and Joanne P. Verschoor, doing business as Northern Cattle Company, Appellants,

v.

DAKOTA COUNTY STATE BANK, a Nebraska Corporation, Appellee.

Nos. 80–1205, 80–1324, 80–1325.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 11, 1980.

Decided Feb. 25, 1981.

Robert H. Berkshire, Omaha, Neb., for appellant Dakota County State Bank.

Charles O. Forrest, Omaha, Neb., for appellee Dockendorf.

J. Patrick Ryan, Sioux City, Iowa, for appellee Verschoor.

Before BRIGHT and STEPHENSON, Circuit Judges, and LARSON, Senior District Judge.*

BRIGHT, Circuit Judge.

In this diversity action, plaintiff Dale Dockendorf, d/b/a Corsica Livestock Sales Company (Dockendorf), and cross-plaintiffs William E. Verschoor, Jr., and his wife, Joanne P. Verschoor, d/b/a Northern Cattle Company (Verschoors), sued the Dakota County State Bank (Bank) for damages arising from the Bank's allegedly wrongful setoff of the Verschoors' bank account and allegedly wrongful dishonor of a $26,908.71 check issued to Dockendorf by the Verschoors. Dockendorf sought recovery from the Bank for the amount of the dishonored check and the Verschoors sought damages for injury to their reputation and for the loss of their cattle business. A jury returned verdicts for the plaintiffs, awarding Dockendorf $26,908.71 and the Verschoors $175,000.

The Bank now appeals (No. 80–1205), asserting that it was entitled to a directed verdict as a matter of law and that the district court[1] erred in denying its posttrial motion for a judgment notwithstanding the verdict or a new trial. The Bank alternatively contests the damage award to the Verschoors as excessive and as duplicative of the award to Dockendorf. Dockendorf and the Verschoors cross-appeal (Nos. 80–1324 and 80–1325) from an order of the district court staying the plaintiffs' execution against the Bank's assets conditioned on the Bank posting a supersedeas bond in an amount sufficient to pay the judgments.

We affirm the judgments, except as to the damages of $175,000 awarded the Verschoors. On that issue, we vacate the order denying a new trial and remand to the district court for consideration of whether that award in part duplicated the

* EARL R. LARSON, United States Senior District Judge, District of Minnesota, sitting by designation.

1. The Honorable Robert V. Denney, United States District Judge for the District of Nebraska.

award to Dockendorf by including the amount of the dishonored check. We reject the cross-appeals.

## I. *Background.*

In 1972, the Verschoors opened two joint checking accounts with the Dakota County State Bank of South Sioux City, Nebraska—a personal or household account and a business account. The business account, with which this lawsuit is concerned, was carried under the name of Northern Cattle Company. This business engaged primarily in the buying, selling, and feeding of cattle. The Verschoors subsequently established a line of operating credit with the Bank for their cattle operations.

On several occasions, the Verschoors failed to make timely payments on their loans with the Bank. In some cases, the Bank renewed their loans, thus authorizing an extension of their payment schedule.[2] On two occasions in late 1975 and early 1976, the Bank exercised setoffs against the Northern Cattle Company account to recover delinquent loan payments.[3]

In April and May of 1976, the Bank authorized two loans to the Verschoors—a loan renewal on April 20 in the amount of $53,126.02 and a loan for the payment of taxes in the amount of $7,306 on May 24. By September 9, 1976, however, the Verschoors had paid only $13,331.82 on the April and May notes, although they owed payments of $53,193.60. On September 20, 1976, William Verschoor came to the Bank and discussed possible consolidation and renewal of the April and May notes with F. J. Palmersheim, the Bank's agricultural loan officer. Palmersheim and William Verschoor then travelled to the Verschoors' farm where Palmersheim inventoried the cattle constituting a part of the Bank's security.[4] At this time William Verschoor advised Pal-

mersheim that some of the cattle on the farm did not belong to the Verschoors. On returning to the Bank, William Verschoor and Palmersheim, acting for the Bank, executed a new note and security agreement in the principal sum of $47,945.93, dated September 20, 1976, which consolidated the April and May notes and called for a first payment of $9,854.50 on October 20, 1976. The April note was subsequently stamped "Paid by Renewal." At trial Palmersheim and Lester B. Moore, the Bank's executive vice president, testified, however, that the loan renewal required Moore's approval and that on September 21, 1976, Moore rejected the renewal and decided to exercise a setoff against the Verschoors' Northern Cattle Company account. The Bank made the setoff on September 27, 1976.

Prior to this renewal transaction, in early September, William Verschoor received a telephone call from Arnold Lang, requesting the Verschoors to purchase approximately 325 cattle on Lang's behalf. On September 16, 1976, the Verschoors bought approximately 175 cattle for Lang from Corsica Livestock Sales Company of Corsica, South Dakota, a cattle business operated by Dale Dockendorf.[5] The cattle arrived at the Verschoors' farm on September 17 or 18.

On September 20, the Verschoors shipped the Dockendorf cattle to Lang in O'Brien County, Iowa. Contemporaneously, Joanne Verschoor drew a $74,714.55 sight draft on Lang's account in the Primghar Savings Bank in Primghar, Iowa, and that evening she deposited the draft for collection in the Northern Cattle Company account at the Dakota Bank. On the same date, Joanne Verschoor issued and mailed two checks to Dockendorf on the Northern Cattle Company account in the amounts of $13,989.36 and $24,908.71. The latter check was $2,000

---

**2.** Between April 1, 1974 and September 20, 1976, the Bank made approximately 27 loans or loan renewals to Northern Cattle Company.

**3.** On December 16, 1975, the Bank set off the account in the amount of $15,867.48; on January 28, 1976, in the amount of $2,843.53.

**4.** The April and May security agreements also listed as collateral a mobile home and a certificate of deposit in the amount of $5,000.

**5.** The Verschoors also purchased approximately 150 cattle from Torrington, Wyoming, to fill the Lang order.

short of the price noted on Corsica Livestock's purchase invoice. Dockendorf received these checks on September 23 and Dockendorf's employee promptly called the Dakota Bank to inquire about payment on these checks. The Bank employee informed him that the checks would be paid if funds were available and that payment was anticipated. The caller requested that the Bank representative advise the Verschoors of the $2,000 mistake in the amount of the check.

Subsequently, on September 24, the Bank contacted the Primghar Bank to ascertain whether the sight draft would be honored. That draft was honored and the Bank received the funds on September 27. The Bank then exercised its setoff against the Northern Cattle Company account in the sum of $48,039.29. Dockendorf subsequently received a corrected check dated October 11, 1976, for $26,908.71. The Bank, upon receiving that check for payment, dishonored it on October 18, because of insufficient funds in the Northern Cattle Company account. The other check for $13,989.36 had already been paid.

On February 17, 1978, Dockendorf brought this action against the Bank, Palmersheim, and Moore to recover the amount of the check. Dockendorf alleged that the Bank wrongfully exercised a setoff against funds deposited by the Verschoors in trust for Dockendorf. On January 5, 1979, Dockendorf added the Verschoors as additional party defendants. The Verschoors then entered a cross-complaint against the Bank, alleging a wrongful setoff on grounds that its commercial account should be deemed a trust account, and that the sight draft deposit constituted a special deposit to pay Dockendorf for cattle. The Verschoors further alleged that the Bank had wrongfully exercised a setoff against their business account because the debt to the Bank had not matured at the time of setoff. The Verschoors sought damages for loss to their income and reputation caused by the Bank's wrongful setoff and dishonor. They also

sought indemnity from the Bank against Dockendorf's claim.

On May 3, 1979, the district court granted summary judgment against the Verschoors in favor of Dockendorf in the amount of $26,908.71. This judgment was based on the Verschoors' debt to Dockendorf for cattle purchased, as represented by the October 11 check. After a trial on the remaining issues, the district court instructed the jury that it might return a verdict for both Dockendorf and the Verschoors, if these parties established that the Dakota State Bank knew or should have known that the Verschoors' Northern Cattle Company account was a trust account or that the Lang sight draft, deposited by the Verschoors in their business account, constituted a trust deposit for the benefit of Dockendorf. The district court also instructed the jury that the Bank wrongfully exercised a setoff against the sight draft deposit if the Verschoors' debt to the Bank had not yet matured, subject, however, to the Bank's right to accelerate the unmatured debt if the Bank reasonably believed that the security held by the Verschoors was inadequate to cover their indebtedness.

The jury returned a general verdict against the Bank in favor of Dockendorf and the Verschoors. The Bank then moved for a judgment notwithstanding the verdict or a new trial. The district court denied this motion.

The Bank raises the following issues on appeal:

1) That the evidence establishes as a matter of law that the Verschoors' business account was not a trust account and that the deposit of the sight draft did not constitute a special deposit for the benefit of Dockendorf;[6]

2) That the evidence establishes as a matter of law that the Bank rightfully exercised a setoff against a matured debt of the Verschoors, or an unmatured debt

---

6. The Bank also contends that the special deposit question was outside the scope of the pleadings and, therefore, no evidence should have been received on that theory of recovery.

We reject this contention. The pleadings adequately raise the trust deposit issue and the Bank had ample opportunity during discovery to ascertain the plaintiff's theory of recovery.

which the Bank had the right to accelerate because it reasonably believed itself to be insecure;

3) That the jury awarded excessive as well as duplicative damages to the Verschoors.

## II. *The Bank's Appeal.*

### A. *Trust Account or Deposit.*

 The Bank first argues that the evidence establishing the existence of a trust account or deposit was insufficient to permit consideration of these issues by the jury. Although the account itself in question did not constitute a trust account, the evidence was sufficient for the jury to return a verdict for Dockendorf and the Verschoors on a trust deposit theory.[7]

Under Nebraska law, a bank may not exercise a setoff against a trust deposit in an account if the bank knows of the trust deposit. As the Nebraska Supreme Court stated in *Globe Savings Bank v. National Bank of Commerce*, 64 Neb. 413, 89 N.W. 1030, 1032 (1902):

A bank cannot apply money paid in by a customer and held by him as trustee for another to the payment of his own debt. If the bank has knowledge of the trust relation it will be liable for a conversion of the fund in case it applies it in satisfaction of its own indebtedness.

See also *State v. Bank of Otoe*, 125 Neb. 530, 251 N.W. 111 (Neb.1933); *State v. Farmers' and Merchants' Bank of Deshler*, 125 Neb. 800, 252 N.W. 316 (Neb.1934).

[T]he burden devolves on the party who claims that the deposit is a special one to show that it was received by the bank with the express or clearly implied agreement that it should be kept separate from the general funds of the bank and that it should remain intact.

*Glass v. Nebraska State Bank*, 175 Neb. 673, 122 N.W.2d 882, 887 (Neb.1963) (quoting 7 Am.Jur. Banks § 419). The Bank asserts that a jury could not reasonably find on the basis of the evidence presented at trial that the Bank knew of the special deposit.[8] Thus, the Bank argues that the judgments in question should be reversed as contrary to law.

In deciding whether the district court erred in denying a judgment n.o.v., we must view the evidence in the light most favorable to the prevailing parties, giving them the benefit of all reasonable inferences. *Dulin v. Circle F. Industries, Inc.*, 558 F.2d 456, 465 (8th Cir. 1977). After a careful review of the record, we conclude that the evidence created a jury question concerning the Bank's knowledge of the trust deposit, and, therefore, the district court properly submitted this issue to the jury.

---

7. The district court submitted the following instruction to the jury:

In determining whether the plaintiff and cross-plaintiffs have proven by a preponderance of the evidence that the Dakota County State Bank knew or should have known that the deposit by the Verschoors belonged to a third person, that is, whether the deposit was in the nature of a special deposit or whether account No. 13–212–8 was a special or trust account, you may in your deliberations consider the purpose for which the deposit was made, the purpose for which account No. 13–212–8 was created, the relationship existing between the depositor, the Verschoors, and the Dakota County State Bank, and the intentions of the parties as expressed in their contract and as revealed by the facts and circumstances of this case, such as the words and acts of the parties and their course of business.

The evidence focused on the deposit of the Lang sight draft for $74,714.55, which, when collected, constituted all or almost all of the credit in the Northern Cattle Company account. Thus the question presented to the jury was whether this deposit alone constituted a trust deposit or special deposit. The trust account issue was not an alternative theory of recovery; rather, it provided another way of proving that the Lang sight draft constituted a trust deposit. Because only one deposit was in question, it was not prejudicial error for the court to instruct the jury on a trust account in conjunction with its instruction on a trust deposit.

8. The Bank also argues that the evidence did not show that the Bank agreed to keep the deposit separate. The court, however, instructed the jury that if a bank accepts a special deposit, knowing it to be a trust deposit, it impliedly agrees to keep it separate. The Bank did not object to this instruction and does not now argue that it was erroneous.

William Verschoor testified that when he first opened his business account with the Bank, he explained to a bank officer that he bought cattle on order, that he would pay for the cattle by check and then draw a sight draft on the customer's account. William Verschoor also stated that he conducted his business with sight drafts ninety percent of the time, and that on several occasions the Bank had loaned the Verschoors money to cover the checks issued for the purchase of cattle until the Bank collected the sight draft funds. Palmersheim acknowledged his awareness of the Verschoors' method of buying and selling cattle. William Verschoor and Palmersheim agreed that Palmersheim had been informed that the Verschoors did not own some of the cattle located on their farm at the time of the inventory and that the Verschoors would be making a sight draft deposit to the Bank.[9] Further, the uncontroverted evidence established that the Bank knew that the Verschoors had issued checks to Dockendorf for the purchase of cattle contemporaneously with their deposit of the sight draft for collection.

The Nebraska Supreme Court considered a similar situation in *Allen Dudley & Co. v. First National Bank of Omaha*, 122 Neb. 443, 240 N.W. 522 (Neb.1932). In that case, Herrick, the customer of the bank, purchased some cattle on a consignment basis for Allen Dudley and Company. Herrick paid for the cattle with a check, and then drew two sight drafts upon the Allen Dudley account. After Herrick deposited the sight drafts in his bank account, the bank offset a portion of those funds against his indebtedness to the bank. The court found that the setoff was improper, basing its decision primarily on Herrick's testimony that he had bought and sold cattle the same way for two years through the bank. The court stated:

> In the light of this testimony, it cannot be said that the appellant bank did not have knowledge of Herrick's manner of doing business, and when the two sight drafts were received on Sunday, November 17, 1929, it knew or should have known that these sight drafts were drawn on Allen Dudley & Company against shipments of cattle which Herrick had made, and that Herrick had bought these cattle from various parties, as the record shows he had been in the habit of doing for a year or more, and that undoubtedly there were checks outstanding, representing the purchase price of these cattle, which were to be paid out of the proceeds of these drafts. [*Id.* 240 N.W. at 524.]

Similarly in the present case, the Verschoors and Dockendorf presented evidence relevant to the Bank's knowledge of the nature and purpose of the sight draft deposit; the course of prior dealing between the Verschoors and the Bank; the execution of a renewal note; the deposit of a sight draft for collection from a cattle purchaser (Lang); and an inquiry from a cattle seller (Dockendorf) concerning the Bank's payment of two checks issued by the Verschoors for the purchase of cattle. The jury could conclude from this testimony and corroborating evidence that the Bank recognized that the Dockendorf checks were to be paid out of the proceeds of the Lang sight draft, and, therefore, knew that the deposit of the sight draft constituted a trust deposit.[10]

---

9. William Verschoor maintained that he told Palmersheim he was shipping the cattle out that evening and that he mentioned the sight draft at the time of the inventory. Palmersheim admitted learning of the sight draft when he and William Verschoor returned to the Bank, but denied that William Verschoor gave him any information about an imminent shipment of cattle.

10. The Bank relies on the Nebraska cases of *Diehl v. Johnson*, 123 Neb. 699, 243 N.W. 901 (Neb.1932) and *Ladenburger v. Platte Valley Bank of North Bend*, 180 Neb. 167, 141 N.W.2d 766 (1966), in arguing that the plaintiffs failed to prove a trust deposit. These cases are readily distinguishable. In *Diehl* the issue before the court was not whether the bank had wrongfully exercised a setoff, but whether the bank had, by merely issuing a deposit slip, assumed the duty to pay a sight draft. In *Ladenburger*, the court was considering the question of when the transfer of property takes place. It did not discuss the difference between a general deposit and a trust deposit.

### B. Wrongful Setoff of an Unmatured Debt.

 The jury further could have concluded that, regardless of any trust deposit status, the Bank exercised a wrongful setoff of an unmatured debt against the Verschoors' account. The plaintiffs introduced exhibits at trial showing that Palmersheim completed a September note and security agreement which consolidated the April and May notes; that Palmersheim, on behalf of the Bank as secured party, and William Verschoor, as debtor, executed this September agreement; and that the April note was marked "Paid By Renewal." Based on this evidence the jury could have reasonably determined that the Bank authorized a loan renewal to the Verschoors on September 20, 1976, calling for a first payment on October 20, 1976, and, therefore, that the Verschoors' debt to the Bank had not matured at the date of the setoff, September 27.

The jury could further have concluded that the Bank was not justified in accelerating the September note. On September 20 the Bank reviewed its collateral and authorized the renewal note. During the next seven days, the Bank made no further inspection of the Verschoors' cattle, nor did it make any further contact with William Verschoor concerning the Bank's security on the September note. The jury could reasonably have rejected the testimony of Palmersheim that William Verschoor had made a false promise to pay $20,000 on the renewal note from the proceeds of the recent sale of his home. The note called for no such payment. Moreover, William Verschoor denied making any such representation and asserted that he had sold his home in May 1976, and received no proceeds from its sale.[11] Thus, the jury could find that the Bank's position regarding its security did not change during the seven days

which elapsed between the loan renewal and the setoff and, therefore, the Bank did not have the right to accelerate the note.

Thus, we conclude from our review of the transcript that the trial judge committed no error in submitting to the jury the claim that the Bank improperly set off its unmatured note against the proceeds of the sight draft.[12]

### C. Damages.

The court instructed the jury that it might award the Verschoors damages for

1. The injury and damages, if any, the cross-plaintiffs sustained to their general reputation and good name in the community;

2. The value of the loss, if any, of the cross-plaintiff's earnings and income from their business as Northern Cattle Company.[13]

In its motion for new trial, the Bank asserted that the jury's award of $175,000 to the Verschoors was excessive and duplicated the damages awarded to Dockendorf. The district court denied the motion for new trial without opinion.

On the issue of excessiveness, the Bank asserts that the Verschoors failed to substantiate the amount of lost earnings and income. At trial, the evidence concerning this question was in dispute. William Verschoor testified that the Bank's dishonor of the Dockendorf check ruined his credit as well as his reputation for honest dealing in the community, thus forcing the Northern Cattle Company out of business at a time when it produced an annual income of $55,000 to $60,000. The 1975–1976 tax returns, however, showed an average yearly income of only about $5,000. William Verschoor responded that those returns did not reflect

---

11. William Verschoor testified that the proceeds of the sale paid off a mortgage on the home and a delinquent note which he had co-signed for his father.

12. The district court in its instructions informed the jury that Dockendorf and the Verschoors could recover on this theory of wrongful setoff. Dockendorf, as the payee of

the check, did not allege entitlement to relief on this theory. The Bank, however, failed to object to this instruction and does not now claim error on appeal.

13. The district court denied the Verschoors' request to instruct the jury on their indemnity claim.

payments made directly on his farm mortgage.

The Bank further asserts that the Verschoors' recovery included the amount of the dishonored check, and thus duplicated the Dockendorf award. This contention rests on the following final argument by the Verschoors' counsel:

> I would ask you to consider that any award that you see fit to give the Verschoors, the debt that he's got to pay, that he will have to pay to Mr. Dockendorf as well in the sum of that $26,000.00.[14]

In light of the general instructions concerning the Verschoors' damages, the jury, in response to the closing argument of Verschoors' counsel, could have considered the dishonored check as part of the Verschoors' loss of earnings and income to their business and thus recoverable. Moreover, the jury's award of $175,000, to the extent such award was based on the loss of future profits,[15] rests upon questionable grounds. Thus, the award of damages may well have been excessive by way of duplication or otherwise.

■ On the record before us, however, we cannot determine the award to be excessive and duplicative as a matter of law. Under the circumstances of this case, the district court should specifically address the damage issue since it is in the best position to determine whether the jury award likely included the amount of the dishonored check or was otherwise excessive. Accordingly, we vacate the order denying a new trial with regard to the claim of excessive damages and remand this question to the district court for specific consideration.[16]

### III. The Cross-Appeals.

■ After judgment was entered on the jury verdict, Dockendorf and the Verschoors secured an execution against the Bank's assets. At the time the execution was served, the Bank tendered a certified money order for $215,891.01 made payable to the Clerk of the United States District Court for the District of Nebraska. Subsequently, the district court entered an order, granting the Bank's request to have the execution set aside and the funds returned to them upon the posting of an adequate supersedeas bond. Dockendorf and the Verschoors now appeal, alleging that this order denied them their right of execution under Nebraska law. Assuming, without deciding that this is an appealable order, we determine that the district court, while it maintained custody over the Bank's funds, could in its discretion stay execution on the Bank's assets, pending appeal to this court, effective upon the Bank's posting of a supersedeas bond. See Fed.R.Civ.P. 62(d). Therefore, we reject the cross-appeals.

### IV. Conclusion.

Accordingly, we affirm the judgments entered in favor of Dockendorf and the Verschoors against the Bank subject to the district court considering modification or a new trial as to Verschoors' damages. Dockendorf and the Verschoors shall have their costs on the Bank's appeal and the Bank is entitled to its costs on the cross-appeals.

---

**14.** Although the Bank did not object to the argument, it raised this issue in its motion for new trial.

**15.** We note that the Bank did not object to the court's instruction concerning the Verschoors' damages; nor did the Bank, in its motion for new trial, assert that the evidence failed as a matter of law to prove lost profits.

**16.** On remand, the court may reject the claim or grant a remittitur or a new trial to correct the error. The resolution of this issue rests within the discretion of the district court.