Busenbarke, Executor, v. Ramey *et al.*

---

BUSENBARKE, EXECUTOR, v. RAMEY ET AL

MORTGAGE.—*Reformation of.—Junior Mortgage.*—A mortgagee may have his mortgage reformed, by the correction of a mistake in the description of the real estate intended to be mortgaged, as against a junior mortgagee, whose mortgage was taken, without notice of such mistake, as a security for an antecedent debt, without the surrender of any old security and without any new consideration moving between the parties, but merely to secure a new note given for the amount of old ones taken up.

| 53 | 499 |
| 129 | 244 |
| 53 | 499 |
| 135 | 191 |
| 53 | 499 |
| 139 | 629 |
| 53 | 499 |
| 142 | 288 |
| 53 | 499 |
| 145 | 604 |
| 146 | 329 |
| 53 | 499 |
| 148 | 95 |
| 53 | 499 |
| 171 | 346 |

From the Montgomery Circuit Court.

*A. Thomson* and *T. H. Ristine*, for appellant.

*W. P. Britton, M. W. Bruner, P. S. Kennedy* and *W. T. Brush*, for appellees.

WORDEN, J.—This action was brought by the appellant,

as executor of James Busenbarke, deceased, against William P. Ramey and his wife, William Mount and Hattie McCune.

The complaint was in two paragraphs. The first alleged, in substance, that on October 23d, 1872, the plaintiff's testator lent to the defendant William Ramey the sum of one thousand dollars, and took his note therefor, payable one year after date, and a mortgage executed by Ramey and his wife on certain real estate described, to secure the payment thereof, which mortgage was duly recorded. That there was a mistake in the description of the property intended to be mortgaged, which mistake was fully described and set forth. That afterwards, viz., on June 9th, 1873, Ramey and his wife executed to Hattie McCune a mortgage on the same property intended to be described in the mortgage to the plaintiff's testator, to secure the payment of a debt which Ramey owed to Mount, and which existed long prior to the execution of the mortgage to the plaintiff's testator. That said Hattie McCune took no part in the transaction of the business, which was all done by Mount, the mortgage being executed to her at the request of Mount, she being a near relative of his. That Ramey is insolvent; and that at the time of the execution of the latter mortgage Mount had notice of all the facts in relation to the claim of the plaintiff's testator.

There were other allegations not necessary to be noticed.

The second paragraph was the same in substance as the first, except that it contained no allegation of notice to Mount.

Prayer for a reformation of the mortgage to the plaintiff's testator, its foreclosure, and for general relief.

A demurrer, filed by Mount and McCune, to the second paragraph, for want of sufficient facts, was sustained, and exception taken.

Mount and McCune then filed an answer in denial of the first paragraph, and Ramey and his wife filed an answer admitting the facts alleged in the complaint.

The issue was submitted to the court for trial, and the

court found for the plaintiff against Ramey and wife, and that as against them he was entitled to have his mortgage reformed, but found against the plaintiff in favor of Mount and McCune, and that as against them he was not entitled to the reformation, and that the latter mortgage was a prior lien upon the premises.

Motion by plaintiff for a new trial overruled, and exception. Judgment. Appeal by plaintiff below.

The question arising upon the demurrer to the second paragraph of the complaint and the motion for a new trial is, whether the plaintiff, under the circumstances, is entitled to have his mortgage reformed and the mistake corrected, as against Mount and McCune, though Mount had no notice of the mistake at the time of taking the latter mortgage.

We are of opinion, upon an examination of the authorities, and upon principle, that he is entitled to the reformation.

By the averments of the second paragraph of the complaint, and by the evidence adduced upon the trial, it appears that the latter mortgage was given to secure an antecedent debt, which Ramey owed Mount.

Nothing was advanced by Mount or McCune upon the execution of the latter mortgage, nor were any old securities given up or surrendered.

It appeared upon the trial, by the evidence of Mount, that he had several notes on Ramey, and that the interest on them was computed, and a new note for the whole amount given him, in the name of Hattie McCune, and the mortgage to secure its payment.

It is settled, that a mistake in a mortgage will be corrected as against subsequent judgment-creditors. *White* v. *Wilson*, 6 Blackf. 448; *Sample* v. *Rowe*, 24 Ind. 208.

In *Flanders* v. *O'Brien*, 46 Ind. 284, which was decided after much reflection, and after a rehearing had been granted, it was held that such mistake in a mortgage could not be corrected as against the purchaser of a subsequent judgment, who had invested his money in the purchase of the judg-

ment upon the faith of the apparent lien of the judgment upon the land.

The true principle, as we think, was applied in that case. The court said:

"The equity in favor of the mortgagee in such cases may be stronger than that in favor of the judgment plaintiff. The judgment plaintiff has not, probably, parted with his money on the faith of the apparent facts. But where the judgment has been sold and assigned to one ignorant of the mistake in the mortgage, and who has expended his money upon the faith of the rights of the parties, as they appear in the respective securities, it is difficult to see any superior equity in the mortgagee."

It is urged by counsel for the appellees, that "between creditors who have equal equities there can be no relief for a mistake." The proposition may be conceded. But the equities between these creditors are not equal. The plaintiff's testator lent his money upon the faith of the security which he supposed he was obtaining. Mount invested nothing when he took his mortgage, and lost nothing by taking it.

But it is urged that Mount and McCune should be regarded as purchasers in good faith, for a valuable consideration, and, as such, protected against the reformation which was sought. The authorities, however, upon this point are clearly against the appellees.

In Hare & W. Lead. Cas., vol. 2, p. 104, 3 Am. ed., it is said, that "it is equally well settled, * * * that, although a sale, vitiated by fraud, cannot be set aside in the hands of a *bona fide* purchaser, from the fraudulent vendee; yet, that no one can claim the benefit of this doctrine, who has not parted with value, or who has taken the goods as security for an antecedent debt; *Buffington* v. *Gerrish,* 15 Mass. 156; *Hodgeden* v. *Hubbard,* 18 Vt. 504; *Poor* v. *Woodburn,* 25 Vt. 234; *Clark* v. *Flint,* 22 Pick. 231. In *Upshaw* v. *Hargrove, Adm'r,* 6 Sm. & M. 286, *Boone, Adm'r,* v. *Barnes,* 23 Miss. 136, and *Halstead* v. *The President, etc., of the Bank of Kentucky,* 4 J. J. Mar. 554, the same rule was applied to the

conveyance of land by a debtor to a creditor, which was said not to render the latter a purchaser for value, unless something was given up or relinquished on the faith of the conveyance, or the transfer accepted in absolute payment or satisfaction for the debt.

"Similar decisions were made in *Donaldson* v. *The Bank of Cape Fear*, 1 Dev. Eq. 103, and *Bragg* v. *Paulk*, 42 Me. 502; and the conveyance of land as collateral security for a precedent debt held not to entitle the grantee to protection against prior equities."

The case of *Dickerson* v. *Tillinghast*, 4 Paige, 215, went further than we need to go in this case, for there it was held, that, "to constitute a *bona fide* purchase, for a valuable consideration, within the meaning of the act, the purchaser must, before he had notice of the prior equity of the holder of an unrecorded mortgage, have advanced a new consideration for the estate conveyed, or have relinquished some security for a pre-existing debt due him. The mere receiving of a conveyance in payment of a pre-existing debt is not sufficient."

The proposition that the receiving of a conveyance by way of mortgage to secure the payment of a pre-existing debt is not sufficient, is supported by the following additional cases: *The Manhattan Co.* v. *Evertson*, 6 Paige, 644; *Van Heusen* v. *Radcliff*, 17 N. Y. 580; *Powell* v. *Jeffries*, 4 Scam. 387; *Morse, Assignee,* v. *Godfrey*, 3 Story, 364.

In the latter case, Mr. Justice STORY, in delivering the opinion of the court, p. 390, said:

"Mr. Chancellor WALWORTH, in *Dickerson* v. *Tillinghast*, 4 Paige R. 215, seems to have gone somewhat further, and to have held, that a transfer to a grantee in payment of a pre-existing debt, without giving up any security, or divesting himself of any right, or placing himself in a worse situation than he was in before, of an estate, upon which there was a prior unrecorded mortgage, of which the grantee had no notice, did not make him a purchaser, in the sense of the rule, for a valuable consideration; * * * * I do not

say that I am prepared to go quite to that length, seeing, that by securing the estate as payment, the pre-existing debt is surrendered and extinguished thereby. But here, there was no such surrender or extinguishment or payment; and the general principle adopted by the learned chancellor is certainly correct, that there must be some new consideration, moving between the parties, and not merely a new security given for the old debts or liabilities, without any surrender or extinguishment of the old debts and liabilities, or the old securities therefor."

We need not determine what would have been the effect of an absolute conveyance of the property by Ramey and wife to McCune in payment and extinguishment of the debt which Ramey owed Mount. The conveyance was made by way of security only, for the old debt. McCune, it may be observed, is a mere volunteer, and can occupy no better position than could Mount, had the mortgage been made to him. No securities were surrendered or given up by Mount in the proper sense of that term. The taking up of the old notes and the giving of the new one for the total amount, were but a changing and consolidating of the evidence of the debt.

For these reasons, we are of opinion that the court below erred in sustaining the demurrer to the second paragraph of the complaint, and in overruling the plaintiff's motion for a new trial.

The judgment below is reversed, at the costs of Mount and McCune, and the cause remanded for further proceedings in accordance with this opinion.

ON PETITION FOR A REHEARING.

PERKINS, J.—In this case, Ramey executed two mortgages; the first on the 23d of October, 1872, to James Busenbarke, to secure a loan of one thousand dollars, due one year after date. In this mortgage a mistake was made in the description of the property mortgaged.

The second mortgage was executed on the 9th of June, 1873, by Ramey to Hattie McCune, to secure a note for two thousand eight hundred dollars, and was upon the same property, correctly described, as was the prior mortgage to Busenbarke, in which mortgage the property was errone-ously described.

In a suit to foreclose the first mortgage, that given to Busenbarke, it was held by this court, in an opinion deliv-ered by WORDEN, J., that the mistake in the mortgage, in describing the property, might be corrected and the lien of it established on the property, as against Hattie McCune, the subsequent mortgagee, on the ground that said McCune's mortgage was simply to secure a prior debt.

In the petition for a rehearing, it is admitted the decision made in the case is correct, if it be true in fact that the McCune mortgage was made to secure a prior debt.

It is insisted that, on the contrary, the record shows the McCune mortgage to have been given for a loan made at the time of the execution of the mortgage. This is a ques-tion of fact that must be settled by the evidence in the record. We copy all relating to it.

William P. Ramey testified: "I was owing William Mount, and he held a number of notes on me of different sums, and he wanted them made into one note and secured by mortgage. These notes were for money and interest of business transactions of some seven or eight years past. He brought all the notes to the store, and we counted up the interest and included all the debts in one note. He wanted the note and mortgage given to his niece, Hattie B. McCune. She was not present then or at any time, and never had any-thing to do with the business."

Hattie McCune testified: "I had no conversation with any one in regard to the business, except my uncle, Mr. Mount. I would not have reloaned the money to Ramey on the security of the mortgage given to me, had I known that Busenbarke held a mortgage on said lots."

William Mount testified: "I fetched down the notes to

William P. Ramey's store, and his son, William H. Ramey, counted up the interest on them.   Some of the notes held in . her name" (McCune's), "and some in my name.   The old man, William P. Ramey, his son, William H. Ramey, and myself were present.   William H. Ramey counted up the interest on all the notes, and I told them to draw up a note for the whole amount, which was done and given to me in Hattie B. McCune's name.   William P. then asked his son if he should give a·mortgage to secure this note, on the brick house."

This is all the evidence on the point of the consideration of the mortgage of McCune.   It shows that that mortgage was given to secure a prior debt.   It shows that a new note was given for that debt, at the time of the execution of the mortgage; but the evidence does not show how long the notes exchanged for the new note had to run; it does not show that time of payment was extended a day by the new note; it may have been shortened.   It does not appear that any new loan was made upon the execution of the McCune mortgage, or that time was extended for a moment on an old one.

The petition for a rehearing is overruled.