WILLIAM MEIER ET AL., APPELLEES, v. GEORGE GELDIS, APPELLANT.

27 N. W. 2d 215

Filed April 25, 1947. No. 32199.

*William N. Jamieson,* for appellant.

*Cranny & Moore,* for appellees.

Heard before SIMMONS, C. J., PAINE, CARTER, MESS-MORE, YEAGER, CHAPPELL, and WENKE, JJ.

WENKE, J.

Plaintiffs, William Meier, Augusta Meier, and Beulah Meier, brought this action in the district court for Douglas County asking that the defendant, George Geldis, be adjudged to be a trustee for the benefit of the plaintiff of certain funds that he had received from John H. Owens and that he be required to account therefor. Decree was entered in favor of the plaintiffs. His motion for new trial having been overruled, defendant appeals.

The record discloses the following: On or about January 28, 1944, John H. Owens induced the plaintiffs to make a $3,200 loan. Plaintiffs understood this loan was being made for the benefit of Carl A. and Caroline G. Swanson, who are husband and wife, and was to be secured by their mortgage on 80 acres of land in Dodge County, Nebraska. On January 28, 1944, the plaintiffs delivered to John H. Owens for the Swansons the sum of $3,200 and in consideration thereof Owens delivered to the plaintiffs what purported to be a mortgage note of Carl A. and Caroline G. Swanson in the sum of $3,200 together with interest coupons thereto attached and a real estate mortgage on 80 acres of land in Dodge County securing the same. The mortgage had been recorded. The signatures of Carl A. and Caroline G. Swanson on all of these instruments were made by John H. Owens without authority from the Swansons and, in fact, were forgeries. The Swansons had never authorized Owens to secure the loan for them nor did they ever receive any part of the proceeds.

On January 29, 1944, after Owens had received the $3,200 he deposited $3,175 thereof to his account in the

Omaha National Bank. Immediately before this deposit was made his account showed a balance of $7.09. On January 31, 1944, before any other deposit was made to this account, Owens drew a check thereon payable to the Omaha National Bank in order to purchase a draft in the sum of $1,000. This draft was made payable to the defendant and delivered to him on the same day. The check was charged to Owens' account and sufficient of the deposit remained to cover it.

Prior to January 31, 1944, the defendant had talked to Owens about buying a farm and for that purpose had, on November 1, 1943, advanced to Owens the sum of $500. Again on November 26, 1943, he advanced a like sum for the same purpose. No contract was obtained and defendant asked Owens to return the money. He received from Owens the aforesaid draft in payment thereof. Owens died on August 9, 1945, and thereafter, on September 15, 1945, the plaintiffs discovered that the signatures of the Swansons were not genuine but were forgeries.

The loan has never been paid.

It is the money defendant received by virtue of the draft that plaintiffs are seeking to recover.

Where property, as here, has been acquired by fraud, equity, at the suit of the injured parties, will impress a constructive trust upon such property in their favor and, in the event of a prior· transfer by the wrongdoer, will trace the property, if possible, through whatever mutations and impress a trust thereon in the hands of a third person, unless he be a bona fide purchaser for value and without notice. Cady v. South Omaha Nat. Bank, 46 Neb. 756, 65 N. W. 906; Allen Dudley & Co. v. First Nat. Bank, 122 Neb. 443, 240 N. W. 522.

By his conduct in obtaining these funds Owens became a trustee thereof ex maleficio and the question arises whether the antecedent indebtedness of the defendant is such a consideration as to make him a bona fide purchaser for value. The record shows he had no notice

either as to the source or nature of the funds with which he was paid.

As stated in 54 Am. Jur., Trusts, § 273, p. 216: "Whether an antecedent indebtedness is such consideration as to make one a bona fide purchaser for value with the consequence that a trust cannot be enforced against the property or funds in prejudice of his rights is a matter concerning which there are differences of opinion. Many courts follow the rule that the antecedent debt is not such consideration as to have the consequence of cutting off the trust against the property or funds applied or pledged to the satisfaction of the debt, where the creditor acts in good faith and without notice and where he has parted with nothing and has not changed his position, even though it is admitted that ordinarily an antecedent debt is good consideration."

Also, in 65 C. J., Trusts, § 923, p. 994: "As a general rule, where trust property has been transferred to pay or secure an antecedent debt, the debt does not constitute such a valuable consideration as entitles the creditor to hold the property free from the trust if he has no notice thereof; * * *."

"The general rule is that an antecedent debt does not form a valuable consideration, in a case of this kind, so as to make the creditor, who is paid from wrong funds, a purchaser without notice. 2 Pom. Eq., 622, and authorities cited." Swift v. Williams, 68 Md. 236, 11 A. 835.

" * * * where the money or property is found in the possession of one who has parted with nothing, and who has not changed his position to his injury because of the apparent ownership of the one in possession of the money, it will be returned to the true owner. A pre-existing debt is not such a consideration as will constitute a party a bona fide holder for value, and one who receives money in payment of a pre-existing debt must therefore take it subject to prior equities. Hewitt et al. v. Powers (1882), 84 Ind. 295; Busenbarke, Executor, v. Ramey et al. (1876), 53 Ind. 499; Louthain et al. v. Miller

(1882), 84 Ind. 295; Busenbarke, Executor v. Ramey, 89 Ind. 17; New Albany National Bank et al. v. Brown et al. (1916), 63 Ind. App. 391, 114 N. E. 486." Peoples State Bank v. Caterpillar Tractor Co., 213 Ind. 235, 12 N. E. 2d 123. See, also, Porter v. Roseman, 165 Ind. 255, 74 N. E. 1105.

This court, in Allen Dudley & Co. v. First Nat. Bank, *supra,* adopted the rule that an antecedent debt is not such consideration as to have the consequence of cutting off the trust against the funds applied to the satisfaction of the debt, although the creditor acts in good faith and without notice but has not changed his position. See, also, Cady v. South Omaha Nat. Bank, *supra,* and Union Stock Yards Nat. Bank v. Campbell, 2 Neb. (Unof.) 72, 96 N. W. 608.

As stated in Allen Dudley & Co. v. First Nat. Bank, *supra,* in quoting from Shotwell v. Sioux Falls Savings Bank, 34 S. Dak. 109, 147 N. W. 288: "We deny that there is any recognized principle of law, or even any reason founded upon that necessity which is said to know no law, that will sustain either the justice or necessity of holding that, when a fund, even though it consists of money, can be fully and clearly traced into the hands of one who has neither paid a valuable consideration therefor nor changed his relation to the person from whom the fund was received so as to give rise to any equitable defense against the claims of the true owner of such fund—when one man has money which in equity and good conscience belongs to another—such fund should not be recovered by the equitable owner thereof."

The record does not show that the defendant in any way changed his relation to Owens so as to give rise to any equitable defense against the claims of the plaintiffs. If such change of position actually occurred it should have been pleaded and proved. Cady v. South Omaha Nat. Bank, *supra.*

The appellant contends for the rule, "Where one of two innocent parties must suffer a loss, he whose negligence caused the injury should bear the loss." In view of the foregoing principles of law as herein set forth and the facts of this case, we do not think that the rule is applicable here.

For the reasons stated we think the holding of the trial court is correct and should be affirmed.

AFFIRMED.