AUGUSTA MEIER ET AL., APPELLANTS, v. GEORGE GELDIS, APPELLEE.

28 N. W. 2d 140

Filed June 20, 1947. No. 32250.

 

 

*Cranny & Moore,* for appellants.

*William. N. Jamieson,* for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, MESS-MORE, YEAGER, CHAPPELL, and WENKE, JJ.

WENKE, J.

Plaintiffs, Augusta Meier and Beulah Meier, brought this action in the district court for Douglas County asking that the defendant, George Geldis, be adjudged to be trustee for the benefit of the plaintiffs of certain funds that he had received from John H. Owens and that he be required to account therefor. The petition sets forth two causes of action. Decree was entered in favor of the defendant. Their motion for new trial having been overruled, plaintiffs appeal.

The parties will be referred to as they appeared in the district court.

As to the first cause of action the record discloses the following: John H. Owens induced the plaintiffs to make a $3,000 loan. Plaintiffs understood this loan was being made for the benefit of Helen E. Geldis and George P. Geldis, wife and husband, and was to be secured by their mortgage on 40 acres of land in Douglas County, Nebraska. Helen E. Geldis owned this land. On March 28, 1945, the plaintiffs delivered to John H. Owens the sum of $3,000 for the Geldis loan. In consideration thereof Owens delivered to the plaintiffs what purported to be a mortgage note of Helen E. Geldis and George P. Geldis in the sum of $3,000 together with interest coupons thereto attached and a real estate mortgage on 40.5 acres of land in Douglas County securing the same. This mortgage had been recorded and Owens delivered to plaintiffs an abstract showing the mortgage to be a first lien on the premises.

However, the signatures on all of these instruments

were not the signatures of Helen E. Geldis and George P. Geldis nor were they made with their authorization or approval. In fact, they are forgeries. The Geldis' had never authorized Owens to secure the loan for them nor did they receive any part of the proceeds thereof, except as hereinafter set forth. The husband, George P. Geldis, is the same party as the defendant herein.

On March 28, 1945, Owens deposited the $3,000 he had received from the plaintiffs to his account in the Omaha National Bank. Immediately before this deposit was made his account showed a balance of only $23.72. On March 30, 1945, Owens drew a check on this account in the sum of $1,500 payable to George Geldis who, on the same day, deposited it to his account in The United States National Bank at Omaha. On March 31, 1945, the check was paid by the Omaha National Bank and charged to Owens' account, there being sufficient balance of the deposit remaining to cover it.

Prior to October 26, 1944, the defendant had talked to Owens about buying a farm and for that purpose did, on the above date, advance to Owens the sum of $1,500. No contract was obtained and defendant asked Owens to return the money. He received from Owens the aforesaid check in payment thereof. Owens died on August 9, 1945, and thereafter, in October 1945, the plaintiffs, for the first time, discovered that the signatures of the Geldis' were not genuine but were forgeries.

The loan has never been paid.

As to the second cause of action the record discloses the following: John H. Owens induced the plaintiffs to make a $12,000 loan. Plaintiffs understood this loan was being made for the benefit of James T. Maxwell and was to be secured by his mortgage on 160 acres of land which he owned in Dodge County, Nebraska. On July 18, 1945, the plaintiffs delivered to John H. Owens the sum of $12,000 consisting of $11,888.37 in cash items and an interest coupon in the sum of $111.63 due on a Carl A. Swanson loan. In consideration thereof Owens

delivered to the plaintiffs what purported to be a mortgage note of James T. Maxwell in the sum of $12,000 together with interest coupons thereto attached and a real estate mortgage on a quarter section of land in Dodge County securing the same. This mortgage had been recorded and Owens delivered to the plaintiffs an abstract showing the mortgage to be a first lien on the premises.

However, the signatures on all of these instruments were not the signatures of James T. Maxwell nor were they made with his authorization or approval. In fact they are forgeries. Maxwell had never authorized Owens to secure the loan for him nor did he receive any part of the proceeds thereof.

On July 18, 1945, Owens deposited to his account in the Omaha National Bank the $11,888.37 in cash items which he had received from the plaintiffs on the loan. Immediately before this deposit was made his account showed a balance of only $275.84. On July 20, 1945, Owens drew a check on this account in the sum of $3,200 payable to Geo. Geldis who, on the same day, deposited it to his account in The United States National Bank of Omaha. On July 21, 1945, the check was paid by the Omaha National Bank and charged to Owens' account, there being a sufficient balance of the deposit remaining to cover it.

Prior to June 11, 1945, the defendant had talked to Owens about buying a farm and for that purpose did, on the above date, advance to Owens the sum of $3,200. No contract was obtained and defendant asked Owens to return the money. He received from Owens the aforesaid check in payment thereof. Owens died on August 9, 1945, and thereafter, in October 1945, the plaintiffs for the first time discovered that the signatures of Maxwell were not genuine but were forgeries.

The loan has never been paid. The record shows that the plaintiffs have recovered $742.51 thereof from the

legal representatives of the estate of John H. Owens, deceased.

It is the money defendant received by virtue of these checks that plaintiffs are seeking to recover.

Where property, as here, has been acquired by fraud, equity, at the suit of the injured parties, will impress a constructive trust upon such property in their favor and, in the event of a prior transfer by the wrongdoer, will trace the property, if possible, through whatever mutations and impress a trust thereon in the hands of a third person, unless he be a bona fide purchaser for value and without notice. Cady v. South Omaha Nat. Bank, 46 Neb. 756, 65 N. W. 906; Allen Dudley & Co. v. First Nat. Bank, 122 Neb. 443, 240 N. W. 522.

By his conduct in obtaining these funds Owens became a trustee thereof ex maleficio and the question arises whether the antecedent indebtedness of the defendant is such a consideration as to make him a bona fide purchaser for value. The record shows he had no notice either as to the source or nature of the funds with which he was paid.

As stated in 54 Am. Jur., Trusts, § 273, p. 216: "Whether an antecedent indebtedness is such consideration as to make one a bona fide purchaser for value with the consequence that a trust cannot be enforced against the property or funds in prejudice of his rights is a matter concerning which there are differences of opinion. Many courts follow the rule that the antecedent debt is not such consideration as to have the consequence of cutting off the trust against the property or funds applied or pledged to the satisfaction of the debt, where the creditor acts in good faith and without notice and where he has parted with nothing and has not changed his position, even though it is admitted that ordinarily an antecedent debt is good consideration."

Also, in 65 C. J., Trusts, § 923, p. 994: "As a general rule, where trust property has been transferred to pay or secure an antecedent debt, the debt does not consti-

tute such a valuable consideration as entitles the creditor to hold the property free from the trust if he has no notice thereof; * * *."

"The general rule is that an antecedent debt does not form a valuable consideration in a case of this kind, so as to make the creditor, who is paid from wrong funds, a purchaser without notice. 2 Pom. Eq., 622, and authorities cited." Swift v. Williams, 68 Md. 236, 11 A. 835.

"* * * where the money or property is found in the possession of one who has parted with nothing, and who has not changed his position to his injury because of the apparent ownership of the one in possession of the money, it will be returned to the true owner. A pre-existing debt is not such a consideration as will constitute a party a bona fide holder for value, and one who receives money in payment of a pre-existing debt must therefore take it subject to prior equities. Hewitt et al. v. Powers (1882), 84 Ind. 295; Busenbarke, Executor, v. Ramey et al. (1876), 53 Ind. 499; Louthain et al. v. Miller (1882), 84 Ind. 295; Busenbarke, Executor v. Ramey, 89 Ind. 17; New Albany National Bank et al. v. Brown et al. (1916), 63 Ind. App. 391, 114 N. E. 486." Peoples State Bank v. Caterpillar Tractor Co., 213 Ind. 235, 12 N. E. 2d 123. See, also, Porter v. Roseman, 165 Ind. 255, 74 N. E. 1105.

This court has followed the principle that an antecedent debt is not such consideration as to have the consequence of cutting off the trust against the funds applied to the satisfaction of the debt, although the creditor acts in good faith and without notice but has not changed his position. See, Cady v. South Omaha Nat. Bank, *supra;* Union Stock Yards Nat. Bank v. Campbell, 2 Neb. (Unof.) 72, 96 N. W. 608; and Allen Dudley & Co. v. First Nat. Bank, *supra.*

As stated in Allen Dudley & Co. v. First Nat. Bank, *supra,* in quoting from Shotwell v. Sioux Falls Savings Bank, 34 S. D. 109, 147 N. W. 288: "We deny that

there is any recognized principle of law, or even any reason founded upon that necessity which is said to know no law, that will sustain either the justice or necessity of holding that, when a fund, even though it consists of money, can be fully and clearly traced into the hands of one who has neither paid a valuable consideration therefor nor changed his relation to the person from whom the fund was received so as to give rise to any equitable defense against the claims of the true owner of such fund—when one man has money which in equity and good conscience belongs to another —such fund should not be recovered by the equitable owner thereof."

The record does not show that the defendant in any way changed his relation to Owens so as to give rise to any equitable defense against the claims of the plaintiffs. If such change of position actually occurred it should have been pleaded and proved. Cady v. South Omaha Nat. Bank, *supra*.

The defendant contends for the rule, "Where one of two innocent parties must suffer a loss, he whose negligence caused the injury should bear the loss." In view of the foregoing principles of law as herein set forth and the facts of this case, we do not think that the rule is applicable here.

For the reasons stated we find the holding of the trial court should be reversed with directions to enter judgment for the plaintiffs on both causes of action.

REVERSED WITH DIRECTIONS.