AUGUSTA MEIER ET AL., APPELLANTS, V. CLEO L. TROSPER, APPELLEE.

40 N. W. 2d 811

Filed January 13, 1950. No. 32666.

*Cranny & Moore,* for appellants.

*Burbridge & Burbridge,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

Plaintiffs, Augusta Meier and Beulah Meier, brought this action in the district court for Douglas County asking that the defendant, Cleo L. Trosper, be adjudged to be trustee for the benefit of the plaintiffs of certain funds received by her and that she be required to account therefor. Decree was entered in favor of the defendant and plaintiffs' action dismissed. Their motion for new trial having been overruled, plaintiffs appeal.

The parties will be referred to as they appeared in the district court.

The record discloses the following: John H. Owens, also known as J. H. Owens and Jack Owens, induced the plaintiffs to make a $12,000 loan. Plaintiffs understood this loan was being made for the benefit of James T. Maxwell and was to be secured by his mortgage on 160 acres of land which he owned in Dodge County, Nebraska. On July 18, 1945, the plaintiffs delivered to John H. Owens the sum of $12,000 consisting of cash items in the sum of $11,888.37 and an interest coupon in the sum of $111.63 due on a Carl A. Swanson loan. In consideration thereof Owens delivered to the plaintiffs what purported to be a mortgage note of James T. Maxwell in the sum of $12,000, together with interest coupons thereto attached, and a real estate mortgage securing the same on a quarter section of land in Dodge County. This mortgage had been recorded and Owens delivered to plaintiffs an abstract of title to this property showing the mortgage to be a first lien on the premises.

However, the signatures on all of these instruments

were not the signatures of James T. Maxwell nor were they made with his authorization or approval. In fact, they are forgeries. Maxwell had never authorized Owens to secure the loan for him nor did he receive any part of the proceeds thereof.

On July 18, 1945, Owens deposited in his account in The Omaha National Bank the $11,888.37 in cash items which he had received from the plaintiffs on the Maxwell loan. Immediately before this deposit was made his account showed a balance of only $275.84.

On August 6, 1945, Owens made his account in The Omaha National Bank into one of joint survivorship of himself and A. C. Owens, his wife, also referred to as Nan C. Owens. Thereafter Owens died. He died on August 8, 1945. On September 1, 1945, A. C. Owens drew a check on this account in the sum of $500 payable to Cleo L. Trosper. Cleo L. Trosper endorsed it. It was then presented to The United States National Bank of Omaha and through the Omaha Clearing House presented to The Omaha National Bank for payment. It was paid by The Omaha National Bank on September 11, 1945, and on the same day charged to the Owens account in that bank. At the time it was charged to the account there was a balance therein of $1,308.76 and this withdrawal left a balance of $808.76.

After the deposit of $11,888.37 on July 18, 1945, in Owens' account there were three additional deposits made therein before this check was drawn on and charged thereto. They were as follows: July 19, 1945, $500; July 21, 1945, $3,250; and July 23, 1945, $200. However, the account, after July 18, 1945, when the deposit of $11,888.37 was made, and up until September 11, 1945, when the $500 check payable to defendant was charged thereto, never had a balance below $1,308.76. That was the balance on September 11, 1945, immediately before the check payable to and endorsed by defendant was charged thereto.

The check had endorsed thereon: "Full refund on

Contract of 12/18/44." Apparently defendant had previously paid that amount to Owens and, at the time of his death, it had not been repaid.

Plaintiffs first discovered the fact that Owens had died sometime in September 1945. Shortly thereafter they also learned that the signatures of Maxwell to the note and mortgage were unauthorized and forgeries. The $12,000 has never been repaid except for the sum of $742.51 as shown in the opinion in Meier v. Geldis, 148 Neb. 561, 28 N. W. 2d 140, and the sum of $3,200 recovered by virtue of that litigation. It is the amount which defendant received by virtue of the check which plaintiffs here seek to recover.

"Where property, as here, has been acquired by fraud, equity, at the suit of the injured parties, will impress a constructive trust upon such property in their favor and, in the event of a prior transfer by the wrongdoer, will trace the property, if possible, through whatever mutations and impress a trust thereon in the hands of a third person, unless he be a bona fide purchaser for value and without notice. Cady v. South Omaha Nat. Bank, 46 Neb. 756, 65 N. W. 906; Allen Dudley & Co. v. First Nat. Bank, 122 Neb. 443, 240 N. W. 522." Meier v. Geldis, 148 Neb. 561, 28 N. W. 2d 140. See Meier v. Geldis, 148 Neb. 304, 27 N. W. 2d 215. By his conduct in obtaining these funds Owens became a trustee thereof ex maleficio.

The question then arises whether the antecedent indebtedness to the defendant is such a consideration as to make her a bona fide purchaser for value. The record shows she had no notice either as to the source or nature of the funds with which she was paid.

"An antecedent debt is not such consideration as to have the effect of cutting off the trust against funds applied to the satisfaction thereof even though the creditor acts in good faith and without notice where he has not changed his position in relation to the person from whom the fund was received." Meier v. Geldis,

148 Neb. 561, 28 N. W. 2d 140. See Meier v. Geldis, 148 Neb. 304, 27 N. W. 2d 215.

The record does not show that the defendant in any way changed her situation so as to give rise to any equitable defense against the claim of the plaintiffs. If such change of position actually occurred it should have been pleaded and proved. Cady v. South Omaha Nat. Bank, 46 Neb. 756, 65 N. W. 906; Meier v. Geldis, 148 Neb. 304, 27 N. W. 2d 215; Meier v. Geldis, 148 Neb. 561, 28 N. W. 2d 140.

Nor, under the circumstances here, does the fact that other deposits were made in this account subsequent to July 18, 1945, change the situation, for, as stated in Logan v. Aabel, 90 Neb. 754, 134 N. W. 523, by quoting from Windstanley v. Second Nat. Bank, 13 Ind. App. 544, 41 N. E. 956: " '* * * In the case of trust moneys commingled by the trustee with his own moneys, it was held that money has no earmarks, and when so commingled the whole became an indistinguishable mass and the means of ascertainment failed. But equity, adapting itself to the exigencies of such conditions, finally determined that the whole mass of money with which the trust funds were commingled should be treated as a trust.' " See, also, State ex rel. Sorensen v. Farmers State Bank, 121 Neb. 532, 237 N. W. 857, 82 A. L. R. 7, wherein we approved the foregoing principle.

For the reasons herein stated the judgment of dismissal entered by the trial court is in error and is reversed with directions to enter judgment for the plaintiffs as prayed.

REVERSED WITH DIRECTIONS.