IN RE ESTATE OF FLOYD TILSON BROWN, WILLIAM H. SHERWOOD, ADMINISTRATOR. J. LELAND BROWN, APPELLANT, V. WILLIAM H. SHERWOOD, APPELLEE.

278 N. W. 2d 565

Filed May 1, 1979. No. 41754.

Edward F. Fogarty of Guilfoyle, Fogarty & Lund, for appellant.

Knapp, State, Yeagley, Mues & Sidwell and Person, Dier & Person, for appellee.

Heard before SPENCER, C. J., Pro Tem., BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ., and KUNS, Retired District Judge.

BRODKEY, J.

J. Leland Brown, hereinafter referred to as Leland, appeals to this court from an order entered by the District Court for Furnas County, on June 28, 1977, affirming the action of the county court of that county in approving a settlement for $12,500 of cer-

tain claims made by the estate of Floyd Tilson Brown, deceased, against the Stamford Bank, Stamford, Nebraska, its agents, servants, and employees. Floyd Tilson Brown died September 3, 1968, in Furnas County, leaving surviving him his two sons, Leland and F. Stanton Brown, hereinafter referred to as Stanton. Prior to the death of the father, Floyd Brown, Stanton was operating a farming operation in Nebraska and Kansas, hereinafter referred to as the Nebraska partnership, with his father, while Leland ran a farming operation in Mississippi, hereinafter referred to as the Mississippi partnership, also in partnership with his father. Prior to his death, Floyd Brown became incompetent and his son, Stanton, was appointed his guardian on June 7, 1963. In his will, Floyd Brown provided that Stanton should receive the property owned by the Mississippi partnership. The will also contained a "lopover" clause providing for the equalization of distributions to the two sons.

The appellee in this case is William H. Sherwood, who is the Administrator with Will Annexed of Floyd Brown's Estate; and who, himself, is a practicing attorney in the State of Nebraska, with extensive trial experience covering a period of over 21 years. He was appointed administrator of the estate on November 29, 1968. At the time of Floyd's death, Leland Brown had an accounting action pending in the county court against his brother, Stanton, who was guardian for his father, Floyd Brown; and that litigation was continued through various actions in Nebraska, Kansas, and Mississippi. While the accounting action against Stanton, as guardian of Floyd Brown, was pending, Floyd Brown died and William Sherwood was appointed administrator of his estate. He objected to the accounting of Stanton as guardian; and, after a trial, secured a county court verdict surcharging Stanton with the amount of $65,961. The administrator then appealed the

matter to the District Court where it was combined for trial with an action previously commenced by the administrator against both Stanton and Leland for an accounting of their operations under the two partnerships. The District Court increased the amount of the surcharge against Stanton to $83,224.18.

Thereafter, Leland filed a third party petition in the accounting action against the Stamford Bank and others, as third party defendants, alleging wrongdoing on the part of the bank in its dealings with the guardian, Stanton. Most of Leland's claims, as set forth in his third party petition, were later dismissed on motion; and the appellee, William H. Sherwood, as administrator of the estate, then filed a cross-petition and an amended cross-petition against the bank in the "combined cases." The claims against the bank contained in the cross-petitions all arose out of dealings by the bank with the guardian, Stanton, most of which claims were discussed by the trial judge at length in his memorandum opinion. In his cross-petition, the administrator alleges nine separate causes of action, all generally based upon the bank's knowingly participating with Stanton in the conversion of money and property belonging to the decedent, Floyd Brown, and he prays for damages totaling $85,688 plus interest. It appears from the record that the Browns had maintained various accounts with the Stamford Bank for many years. Prior to his guardianship, Floyd Brown had maintained a checking account with the bank, as had also Stanton and Leland. Also, the Nebraska and Mississippi partnerships had maintained their accounts at the bank. The bank had prepared numerous financial statements both for the partnerships and for the individuals over the years. Without going into great detail as to the nature of the individual claims, which would unduly and unnecessarily extend the length of this opinion,

we deem it advisable to set out in a general fashion the nature of the claims against the bank made by the administrator in his cross-petition. We also add, as revealed by the record, that in evaluating the claims, as set out in the various causes of action for settlement purposes with the bank, the administrator adopted a system for ranking the various claims and causes of action on a scale of 1 to 10, with "10" indicating the best chance of recovery and "1" indicating little chance of recovery. By multiplying each cause of action by its ranking, the administrator, because of his experience in the practice of law, particularly as a trial attorney, was able to approximate the value of each claim for settlement purposes.

In his first cause of action against the bank, the administrator claimed $11,946.41 for conversion by Stanton, in which the bank participated, of certain cattle owned by the Nebraska partnership, which occurred on or about June 7, 1963. Sherwood, the administrator, testified that the chance of success, on his theory that the bank aided, abetted, and participated in the conversion, was "8", with an approximate settlement value of $9,500.

The second cause of action was based upon a claim of conversion of certain machinery belonging to the Nebraska partnership. The administrator gave his opinion that the estate's interest was $4,055.51. The administrator valued this claim as a "5", with a settlement value of approximately $2,000.

The third cause of action against the Stamford Bank was for Stanton's alleged conversion of $14,461 received as a loan from the Lamar Life Insurance Company. The loan was secured by the Mississippi land which was entirely owned by Floyd Brown. The administrator valued his claim against the bank as an "8", with an approximate settlement value of $11,500. The administrator testified that the Stam-

ford Bank knew from Stanton's financial statements that he owned no property in Mississippi, but the bank's defense would be that the insurance company had made the check payable to Stanton Brown.

The administrator valued the fourth cause of action against the Stamford Bank in the amount of $8,311.54 based upon crops, rents, and profits allegedly due on the Nebraska partnership land. He rated this claim as a "5" for settlement purposes, with a value of approximately $4,000.

The fifth cause of action, in the amount of $7,089.30, was based upon a claim that in 1962 and 1963, Stanton converted two truckloads of Mississippi partnership cattle and deposited the proceeds to his own personal account. The bank was charged with aiding, abetting, and participating in the transaction. Sherwood rated this case at "7", with a settlement value of approximately $5,000.

In his sixth cause of action, the administrator claimed that between October 7, 1963, and November 12, 1964, Stanton converted to his own use certain funds drawn from the Mississippi partnership account, although he was unauthorized to draw checks upon that account. The estate's interest in these conversions amounted to $1,201.02. The administrator valued this claim at "8" on the theory that the bank aided, abetted, and participated in the conversion, and that the approximate settlement value of the claim was $1,000. He also testified that one of the bank's defenses to this claim was that not only was Stanton taking money out of the account, but he was also putting money into the account, "and that all the Browns knew it."

The seventh cause of action was based upon the claim that on September 5, 1963, Stanton wrote a check on the Floyd Brown guardianship account in the amount of $461.40 to cover part of his unlawful conversion of property in the estate of Walter I. Farrand, for which he was surcharged. The admin-

istrator rated the claim at "2" with a value of approximately $100 for settlement purposes.

The eighth cause of action, in the amount of $24,-361.43, was based upon the claim that between the dates of June 7, 1963, and September 3, 1968, which was the date of Floyd Brown's death, Stanton drew numerous checks upon the guardianship account, which sums were paid by him to the Stamford Bank for his personal debts to the bank. This cause of action was rated by the administrator as an "8" with a value for settlement purposes of about $19,000.

The ninth cause of action was based upon the claim that from June 7, 1963, until September 3, 1968, the date of Floyd Brown's death, Stanton drew numerous checks totaling $13,800 on the guardianship account, which funds were transferred to Stanton's personal account to cover Stanton's overdrafts, and the officer of the bank had personal knowledge of this fact. The administrator rated this claim at "5" because of his feeling that the bank probably did not receive any of the money; and the settlement value, in his opinion, would be approximately $7,000. He testified that the bank's defense would be that Stanton was distributing approximately equal funds to Leland at the same time.

It appears from the record that the total face value amount of the claims as set out in the amended cross-petition of the administrator was $85,688.38, whereas, the total settlement value for all nine causes of action as rated by the administrator was $59,100.

We should also mention that although not included as one of the nine causes of action, there was involved in this case a controversy over a parcel of real estate referred to as the Farrand Quarter. It appears that Stanton bought the Farrand Quarter at a judicial sale on July 25, 1961, and gave his personal check for the downpayment. Stanton later borrowed

money from the Stamford Bank to cover the check he gave as the downpayment on the property. On June 13, 1962, Floyd Brown and Stanton executed two new notes by which Floyd took $6,000 worth of Stanton's debts and the Nebraska partnership took $10,000 worth of Stanton's debts with the result that $16,000 worth of Stanton's debts were then paid by the new notes. The Farrand Quarter was sold by Stanton to the Stamford Bank which then, in turn, sold it to Duane and Paul Johnson, who were the tenants on the property.

The District Court, in the accounting action, found in its memorandum opinion that no constructive trust arose on the Farrand Quarter because of the fact that the funds used to purchase the property had not initially been those of Floyd Brown's. It appears there is a serious question as to the value of the claim arising out of the Farrand Quarter proceedings, and also a question of whether the claim is of any value whatsoever. Nevertheless, in view of the fact that the proposed settlement of the claims of the estate against the bank, hereinafter discussed, would include the settlement of all potential claims against the bank, and is not restricted to those sued upon by the administrator, it is necessary that the Farrand Quarter matter be referred to in this opinion.

We now turn to a consideration of potential setoffs which the Stamford Bank could claim against any judgment entered against it. The administrator testified the bank could claim the following setoffs: (a) A partition action distribution in the amount of $25,915.11; (b) recovery from Stanton's bonding company – $22,810; (c) one-half of the tractor-trailer which Leland obtained from the estate but did not pay for – $4,125; and (d) one-half of the Kansas/Mississippi estate distribution to Leland – $16,750.70.

We discuss, first, the partition action distribution setoff. Leland and Stanton owned real estate in

Furnas County and as a result of a partition action of the property Stanton became entitled to $25,915.11. The money was retained by the administrator until Leland brought a garnishment action to seize the funds. Leland's attorney read into the record of the partition action a stipulation between the parties that the $25,915.11 belonging to Stanton and paid to Leland shall "be credited first to any judgment obtained by J. Leland Brown, and any balance left therefrom, if any, shall be credited against any judgment obtained by William Sherwood as Administrator with Will Annexed of the Estate of Floyd Tilson Brown * * *."

The administrator also testified that he obtained a $22,810 judgment against Stanton's bonding company as Floyd Brown's guardian. The $22,810 consisted of a $17,000 bond recovery. The difference represented interest and costs. The administrator testified that he believed the recovery from the bonding company could be claimed as a direct credit by the bank against any judgment the administrator might obtain against the Stamford Bank.

At a public auction of the Nebraska partnership assets, Leland bid $8,250 for a truck and tractor, but never paid for them. The administrator testified that he believed one-half of the $8,250, or $4,125, "would constitute some kind of a credit against Leland's ability to recover from Stanton. Now, whether that would constitute also a defense against me is a good question." In other words, the administrator did not know if the Stamford Bank could claim as a credit the value of the truck and tractor which Leland took in the amount of $4,125.

Also, Leland received $16,750.70, representing Stanton's one-half share of the estate distributed in Mississippi and Kansas.

The four items referred to above total $69,600.81 and represent potential credits to be claimed by the Stamford Bank in the event any judgment was en-

tered against it. No interest was calculated on these potential credits with the exception of the recovery from the bonding company.

Leland contends, however, that the total value of the claims against the bank, as set out in the amended cross-petition in the amount of $85,688.38, does not include any interest on the settlement value of the claims which he contends in his brief amount to the sum of $43,903. It must be remembered, however, that there can be no recovery of interest unless the individual causes of action are sustained in the lawsuit. Furthermore, any setoffs to which the bank may be entitled would also draw interest. Under the present state of the record it is impossible to state with any degree of accuracy what amount of interest would be involved with respect to either the claims or the setoffs if the matter came to trial.

The record reveals that negotiations for a settlement of the estate's claims against the Stamford Bank were entered into by the administrator's attorney. At one time the administrator's attorney reported that the Stamford Bank would pay $26,000 in complete settlement of the estate's and Leland's claims against the bank. Leland rejected this offer. The administrator's attorney then reported that he could settle all of the estate's and Leland's claims against the bank, except for Leland's claim in the Farrand Quarter, for $17,500. Leland's attorney at that time accepted the settlement. However, when the parties met in open court to complete the settlement, Leland rejected the offer, contending that he had not understood that the settlement included a release of his claims against the Stamford Bank. The administrator then separately agreed to release the Stamford Bank from all the estate's claims for a $12,500 payment.

After Leland refused to join in the settlement with the Stamford Bank, he brought suit against the bank. The Stamford Bank introduced as a defense

the running of the statute of limitations. A trial before a jury was held, and the defendant prevailed.

The motion to approve the $12,500 settlement between the Stamford Bank and the administrator was heard by the Furnas county court and was approved, although both Leland and Stanton objected to such approval. Leland then appealed the county court's approval to the District Court for Furnas County, Nebraska. A 2-day trial was held in the District Court after which the court affirmed the county court's approval of the settlement.

The administrator testified as follows about the action Leland brought against the Stamford Bank following Leland's refusal of the $17,500 settlement offer: "* * * I was concerned before that case was tried, and I am concerned about it now in terms of * * * the main thrust of the Stamford Bank's defense, to-wit: Their claim is that Leland and Stanton for a long period of time were operating sort of in cahoots. That they had kind of a collusive understanding that they were going to do what was necessary to keep all of these ships afloat, the Mississippi partnership, the Nebraska partnership, and what not. It was that area of this lawsuit more than any other consideration, Mr. Fogarty, that I was concerned about it and that I believe may have been the heart of the defense of the Stamford Bank in that statute of limitations trial. That's what I was worried about, yes, sir.''

The duties of an administrator are set out in the Nebraska statutes. Section 30-304, R. R. S. 1943 (Reissue 1964), provided in pertinent part as follows: "The bond of the executor required by section 30-303 shall be conditioned as follows: (1) To make and return to the county court, within three months, a true and perfect inventory of all the goods, chattels, rights, credits, and estate of the deceased which shall come to his possession or knowledge, or to the possession of any other person for

him; (2) to administer according to law and to the will of the testator all his goods, chattels, rights, credits and estate which shall at any time come to his possession or to the possession of any other person for him, * * *.''

In addition, section 30-803, R. R. S. 1943 (Reissue 1964), provided that: ''Nothing herein shall be construed to prevent an executor or administrator, when he shall think it necessary, from commencing and prosecuting any action against any other person, or from prosecuting any action commenced by the deceased in his lifetime, for the recovery of any debt or claim to final judgment, or from having execution on any judgment.''

Sections 30-304 and 30-308, above quoted, were both repealed by section 316 of L.B. 354, Laws 1974, which became effective January 1, 1977. The new probate code, including section 30-2476, R. R. S. 1943, provides: ''Except as restricted or otherwise provided by the will or by an order in a formal proceeding and subject to the priorities stated in section 30-24,100, a personal representative, acting reasonably for the benefit of the interested persons, may properly: * * * (17) effect a fair and reasonable compromise with any debtor or obligor, or extend, renew or in any manner modify the terms of any obligation owing to the estate. * * *.'' It seems clear that the administrator, under either statute, had authority to settle claims in favor of the estate against third parties.

''The general rule is that an executor in discharging his trust duties must exercise the care, prudence, and judgment that a man of fair, average capacity and ability exercises in the transaction of his own business.'' Bates v. Scottsbluff Nat. Bank, 190 Neb. 456, 209 N. W. 2d 165 (1973). See, also, In re Estate of Bush, 89 Neb. 334, 131 N. W. 602 (1911); In re Estate of Hunter, 129 Neb. 529, 262 N. W. 41 (1935).

''It may be the duty of the personal representative

to prosecute a suit for the collection of assets. In a proper case the court may punish an administrator for contempt on his refusal to sue, or it may revoke his letters and appoint an administrator who will prosecute the action. The duty of an executor or administrator to bring an action on a debt due the estate may depend on whether the claim is reasonably good or one of doubtful or desperate character. He may decline to sue on a doubtful or controverted claim notwithstanding the fact that the heirs think it is well founded, unless they are willing to give him indemnity for costs." 31 Am. Jur. 2d, Executors and Administrators, § 182, p. 103. See, also, Minahan v. Waldo, 161 Neb. 78, 71 N. W. 2d 723 (1955).

The administrator testified that in February of 1976, he sent to Leland's then attorney a demand to allow him to negotiate in good faith toward a settlement or else indemnify the estate for the costs and attorney's fees that would thereafter accrue. Leland did not respond to the administrator's demand.

In Gillilan v. Oakes, 1 Neb. [Unof.] 55, 95 N. W. 511 (1901), this court stated: "The evidence tends to show that at the time such election of remedies was made by the administratrix it appeared to be for the best interests of the estate; that the value of the property at that time exceeded the amount due on the contract and no claim is made of any collusion between the administratrix and the appellee in such election for the purpose of defrauding the estate. Under these conditions her act was clearly binding on the estate."

Leland's attorney admitted at the trial that William Sherwood, the administrator, was in the best position and "knows more about this case than anybody." The administrator stated that he felt the $12,500 settlement with the Stamford Bank for all the estate's claims was the best settlement under the existing conditions, and that a more successful result could not be obtained through litigation. He also

testified it was his recommendation that the District Court affirm the county court's approval of the settlement. Leland has not alleged nor presented any evidence that the administrator participated in any collusion or fraud.

Judge Clark, of the county court of Furnas County, approved the settlement; and Judge Hendrix, of the Furnas County District Court, affirmed the county court's approval, after a full hearing on the matter. Judge Hendrix was the judge in the original accounting actions, and he wrote the memorandum opinion, out of which the estate's claims against the bank arose.

We conclude that the administrator was manifestly correct in his decision to settle the claims of the estate against the Stamford Bank for $12,500, and in his recommendation to both the county and District Court that approval be given him to do so. After full hearings and the presentation of evidence in both courts, they approved his request to effectuate the settlement. The decision whether to settle or compromise disputed claims can not be determined with mathematical precision, and it is possible that the personal representative of an estate may occasionally err in that regard. See In re Estate of Bush, *supra*. We are convinced from the evidence that the administrator conscientiously endeavored to protect the interests of the estate in his endeavor to settle the claims against the bank. He was aided in this regard by his many years of experience as a lawyer, and particularly as a trial lawyer. To have acceded to the desire of the appellant that he proceed to litigate the claims may well have resulted in a smaller recovery to the estate than the amount tendered in settlement; and in addition, would undoubtedly have necessitated incurring substantial court costs, attorney's fees, and other litigation expense, which may or may not have been recovered. Continued litigation might also have resulted in

larger amounts due to the bank as setoffs, and increased amounts of interest thereon. Although the administrator requested indemnity from the appellant as a condition to proceeding with the litigation of the claims, the appellant neglected to provide it when requested. We conclude there was ample evidence in the record to justify the action taken by the administrator to settle the claims in question, and also to justify both the county and District Court in approving such proposed settlement. The judgment of the trial court should be affirmed.

AFFIRMED.