WILLIAM H. SHERWOOD, ADMINISTRATOR WITH WILL ANNEXED OF THE ESTATE OF FLOYD TILSON BROWN, DECEASED, APPELLEE, AND
J. LELAND BROWN, APPELLANT, V.
F. STANTON BROWN ET AL., APPELLEES.

306 N.W.2d 171

Filed May 29, 1981. No. 43465.

Barry L. Hemmerling and Jeffrey, Jeffrey, Hahn & Hemmerling, P.C., for appellant.

John Wightman of Wightman, Fallesen & Bacon for appellees Brown et al.

Heard before KRIVOSHA, C.J., McCOWN, WHITE, and HASTINGS, JJ., and RICHLING, District Judge.

WHITE, J.

Plaintiff, J. Leland Brown, appeals from a decision of the Furnas County District Court granting defendants' motion for summary judgment in this action to quiet title to a parcel of real estate in Furnas County, Nebraska. This action is one of a series of related cases from Furnas County involving J. Leland Brown and F. Stanton Brown, brothers, the estate of their deceased father, Floyd T. Brown, the Stamford Bank (Nebraska), and its holding company, Stamford Banco, Inc. Pertinent parts of the 10-year-plus history of the present case and the related cases are set out below.

The deceased (hereafter Floyd) owned property in Furnas County, Nebraska, which he farmed under terms of a partnership with his elder son, F. Stanton Brown (hereafter Stanton). This operation will be referred to as the Nebraska Partnership. Floyd also owned land in Madison County, Mississippi, which he and J. Leland Brown (hereafter Leland) operated as a partnership (hereafter Mississippi Partnership). Bank accounts for both partnerships, as well as the separate personal bank accounts of Floyd and Stanton (Leland had no personal account), were kept at the Stamford Bank (hereafter Bank) which in 1968 was purchased by a holding company, Stamford Banco, Inc. (hereafter Banco). In 1962 Floyd's separate personal account at the Bank was closed out, and in 1963 he was declared legally incompetent and Stanton was appointed his guardian, and another account was opened at the Bank entitled Floyd T. Brown, Incompetent, F. Stanton Brown, Guardian.

Stanton at all times pertinent lived in Furnas County, while Leland lived in Mississippi. Floyd journeyed

back and forth between Nebraska and Mississippi. It would appear from the records of the various related cases (all filed as part of the bill of exceptions in this case) that the Bank viewed Stanton as a representative of all the Brown family bank accounts, and it is conceivable, although hotly disputed, that at least at times Leland and Floyd depended upon Stanton to handle the banking operations, if only for geographical reasons. However, it not being necessary to a decision in this case, we make no decision as to whether or not Stanton was legally authorized to draw checks on all the Brown accounts at the Bank.

In 1966, or before (another disputed matter), Leland began to become aware that certain large amounts of money he had mailed to Nebraska for deposit to the Mississippi Partnership account had found their way into other Brown family accounts. It is disputed as to whether Leland mailed the money, in the form of checks, to Stanton or directly to the Bank. At any rate, Leland investigated and in 1968 brought an action in Furnas County Court, *In the Matter of the Guardianship of Floyd T. Brown*, asking an accounting by Stanton for his activities and expenditures as Floyd's guardian. Shortly after this action was commenced, Floyd died, and William F. Sherwood was appointed administrator with the will annexed of Floyd's estate. In late 1969 Leland's guardianship action resulted in a judgment surcharging Stanton approximately $65,000 for his activities as Floyd's guardian. Sherwood appealed that decision to Furnas County District Court, which became case No. 7096 in that court. In the meantime, Sherwood, as administrator, had filed a separate action in Furnas County District Court, *Sherwood v. Brown*, against both Leland and Stanton, asking that they both account to the estate for money and property then in their possession or control. This became case No. 7091. Case Nos. 7096, the guardianship appeal, and 7091, the administrator's accounting action against both sons,

were consolidated for trial in February 1970. At that time neither case yet involved the parcel of real estate involved in the present case. In May 1970 Leland filed a third-party complaint against the Bank in the consolidated cases. Most of the petition was eventually stricken and, as to the remainder, a jury found that the action was barred by the statute of limitations. In October 1970 Leland sought leave to file another third-party complaint in the consolidated cases, this one against Banco, and in the proposed petition filed with the court brought in for the first time the parcel of realty involved here.

Leland's proposed third-party petition against Banco contains basically the same allegations as are contained in the petition filed in this case, so they will be set out here. He alleged that on July 25, 1961, Stanton purchased the west one-half of the west one-half of Section 10, Township 1 North, Range 21 West of the 6th P.M., Furnas County, Nebraska (hereafter Farrand Quarter), from the estate of Walter I. Farrand at a referee's sale. To pay for the land, Stanton issued two checks on his personal account and borrowed money from the Bank to cover them. He also borrowed $15,000 from the Veterans Administration and gave that agency a mortgage on the Farrand Quarter in that amount. Leland further alleged that Stanton's personal indebtedness to the Bank grew to $18,500 by June 13, 1962, and that on that date Stanton reduced his personal indebtedness by $16,000 when he transferred $10,000 of his own notes to the Nebraska Partnership account and $6,000 of his own notes to Floyd's personal account. On April 9, 1970, Stanton gave the Bank a deed to the Farrand Quarter in exchange for the Bank's canceling approximately $23,000 in Stanton's notes and its assuming the Veterans Administration mortgage. On April 20, 1970, the Bank conveyed the Farrand Quarter to Banco, whose officers and directors were largely the officers and directors of the Bank. Leland's proposed

petition then stated that neither the Bank nor Banco could have been bona fide purchasers in good faith since they knew of the alleged note transfer by Stanton, which Leland claimed gave Floyd's estate an interest in the property. He asked that title to the Farrand Quarter be quieted in the heirs of Floyd and that the deed to the Bank and to Banco be set aside.

On February 11, 1971, Leland's motion for leave to file this proposed petition was overruled by the District Court. On May 14, 1971, Leland and Sherwood filed the present quiet title action against Stanton, the Bank, Banco, and Paul and Duane Johnson (hereafter Johnsons), who, in September 1970, had received a deed to the Farrand Quarter from Banco. The petition filed in the present case alleged that Stanton retired the notes he had transferred with the proceeds from (1) the sale of Mississippi Partnership cattle and (2) a loan from the Lamar Life Insurance Company which was secured by a mortgage on land owned by Floyd in Mississippi. The gist of the petition is that since the notes which had covered Stanton's personal checks to purchase the Farrand Quarter were part of the personal indebtedness he had reduced by transferring the notes, and since he had allegedly misappropriated the cattle proceeds and loan proceeds to retire these notes, his title to the Farrand Quarter was obtained by fraud. Although the petition did not request the imposition of a constructive trust on the Farrand Quarter, it was upon that theory that the case was argued in the District Court and in this court. In the present action, defendants Bank, Banco, and Johnsons eventually moved for summary judgment, which was granted by the District Court on the basis that no constructive trust could be imposed since there appeared to have been no "wrongdoing at the inception of the title." Sherwood is no longer in the case as a plaintiff, having settled all the estate's claims against the Bank and Banco for $12,500. See *Brown v. Sherwood*, 203 Neb. 209, 278 N.W.2d 565 (1979).

As to the remaining parties, we must reverse the judgment of the trial court. The issue of a constructive trust upon the Farrand Quarter has been fully litigated as between Leland, Stanton, and Sherwood. In a 1972 judgment in the consolidated cases, the District Court ruled on the constructive trust issue. We quote from the memorandum opinion incorporated into that judgment: "[T]he estate claims a constructive trust in the ostensible profit of $13,080.00, six-sixteenths to Mississippi Partnership and ten-sixteenths to Floyd. . . . In this case, the property was initially purchased on the credit of Stanton. Then Stanton borrowed funds to the extent of $6,920.00, the debts being later transferred to two entities along with an additional transfer of $9,080.00 of other debts. Then, the notes were paid in different proportions by one of the entities and a different entity. . . .

". . . . The court does feel . . . that . . . a portion of the consideration paid by Stanton can be traced to Floyd and the Mississippi Partnership. . . . The Veterans Administration Loan was obtained on Stanton's credit, and transferred to the Stamford Bank. No part of that credit has been traced to the res. Therefore, only *seven twenty-seconds of the Farrand Quarter is determined to be held in trust.*

"Seven twenty-seconds of the profit of $13,080.00, or $4,161.82, is charged to Stanton. The Estate shall be credited with ten-sixteenths of said amount, or $2,601.10. The Mississippi Partnership shall be credited with six-sixteenths of said amount, or $1,560.66." (Emphasis supplied.) *Sherwood v. Brown,* Nos. 7091 and 7096. Memorandum Opinion of May 19, 1972.

Although neither party in the briefs to this court points out the fact of this prior decision of the District Court in the consolidated cases, this court has held that: "'[W]here cases are interwoven and interdependent and the controversy involved has already

been considered and determined by the court in former proceedings involving one of the parties now before it, the court has the right to examine its own records and take judicial notice of its own proceedings and judgments in the former action.'" *Johnson v. Marsh*, 146 Neb. 257, 262, 19 N.W.2d 366, 369 (1945); *Reeves v. Watkins*, 208 Neb. 804, 305 N.W.2d 815 (1981). The decision in the consolidated cases was appealed to this court by Leland in 1973, but was dismissed on his own motion. In addition, the memorandum opinion and, in fact, the entire record in the consolidated cases were filed as part of the bill of exceptions in the present case, and thus we may examine those records, given the undeniable interdependence of the Brown cases. Our examination finds that, as between Leland and Stanton, the constructive trust issue was conclusively settled by the order of the District Court in the consolidated cases. Thus, the issue of Stanton's fraud may not now be relitigated. *Peterson v. The Nebraska Nat. Gas Co.*, 204 Neb. 136, 281 N.W.2d 525 (1979).

As between Leland and these defendants, we note that the petition filed in this case does not allege any independent or unrelated fraud upon Leland by the Bank, Banco, or Johnsons *at the time* they obtained their respective titles to the Farrand Quarter. The allegations against these defendants, in sum, raise the issue of their status as bona fide purchasers for value without notice of Stanton's fraud with respect to that parcel of property. The only manner in which their status as such could present an issue would be if Leland has been unable to collect the proceeds of the funds upon which the trial court in the consolidated cases imposed a constructive trust. If he has been unable to collect, Nebraska law allows the courts to trace the trust res into the hands of subsequent purchasers who are not bona fide purchasers for value and without notice. *Meier v. Geldis*, 148 Neb. 304, 27 N.W.2d 215 (1947); *Meier v. Trosper*, 152 Neb. 184,

40 N.W.2d 811 (1950); *Meier v. Meyer*, 153 Neb. 222, 43 N.W.2d 502 (1950).

In the consolidated cases, the trial court imposed a constructive trust upon seven twenty-seconds of the profit received by Stanton when he transferred the Farrand Quarter to the Bank, with a portion of the money so entrusted to be credited to the Mississippi Partnership, of which Leland would be entitled to one-half interest. In 1973 Leland brought proceedings in garnishment, based on that judgment, to obtain approximately $25,000 of Stanton's funds which were held at the time by Sherwood. The record in the consolidated cases shows that Leland signed a receipt for $25,915.11 as a result of successful garnishment of those funds. However, the total amount of money due Leland or the Mississippi Partnership from Stanton as a result of the 1972 order in the consolidated cases was in excess of $25,000, and thus we have no way of knowing whether or not the garnished funds represented payment to Leland from Stanton for misappropriation of Leland's funds in the Farrand Quarter purchase. On remand, therefore, it will be for the District Court to determine whether or not Leland has, in this or any other manner, collected the amount of money due him from Stanton by virtue of the constructive trust already imposed. If he has received that money from Stanton, there will be no need to determine the bona fide purchaser status of the defendants Bank, Banco, or Johnsons since there will be no need to trace the res into their hands. However, if the money Leland received in garnishment proceedings did not include payment per the constructive trust, the court must then determine the bona fide purchaser status of these defendants as it relates to tracing the trust res into their hands. Consequently, there is a genuine issue of a material fact to be determined and summary judgment should not have been granted. *State ex rel. Schuler v. Bd. of County Commissioners*, 205 Neb. 647, 289 N.W.2d 514 (1980).

We therefore reverse and remand for proceedings consistent with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.